[Crim. No. 311. Department Two.—December 14, 1897.]

THE PEOPLE, Respondent, v. CHARLES SEARS, Appellant.

CRIMINAL LAW—BURGLARY—EVIDENCE—OWNERSHIP OF TRUNK CONTAINING STOLEN PROPERTY—PREVIOUS BURGLARY AND THEFT OF TRUNK—CLAIM—POSSESSION OF CONTENTS.—Upon the trial of a defendant accused of burglary with intent to commit larceny, where there was evidence for the prosecution showing that a burglarious entry had been made into a house by two men, and that a trunk standing in the hall had been rifled by them, and clothing, an album, and jewelry taken therefrom, it was proper for the prosecution to prove, as corroborative evidence, that defendant was the owner of a trunk in which most of the stolen property was found; and even if the record had disclosed that defendant had been prosecuted upon another charge of burglary wherein it was alleged that he had stolen the trunk, it would still be competent to show that he owned or claimed the trunk in question, as furnishing evidence of possession of its contents.

ID.—SUFFICIENCY OF EVIDENCE—ALIBI—PROVINCE OF JURY.—Where the evidence for the prosecution showed that the stolen clothing, album, etc., were found in a trunk kept by defendant in a barn owned by another person, and that some of the stolen jewelry was found in his pockets, and that the burglary occurred between 10 and 11 o'clock at night, and there was evidence for the defendant tending to prove that defendant was elsewhere employed until about 11 o'clock on that night, and defendant attempted to account for his possession of the stolen property by saying he was a junk dealer, and that on the next morning he found the goods in a gunny-sack standing against a tree on the corner of two streets, and that he put them in the barn because he was afraid the woman with whom he lived near the barn would take them, the jury was the sole judge as to the guilt or innocence of the defendant, and may have disbelieved the testimony tending to prove an alibi, or that there was a mistake as to the hour when he quit work, or as to the time of the burglary, and their verdict cannot be disturbed upon appeal for insufficiency of the evidence to support it.

ID.—CROSS-EXAMINATION OF DEFENDANT—IMPROPER QUESTIONS—HARMLESS ACTION OF PROSECUTING OFFICER—RULINGS OF COURT.—Where some of the questions put to the defendant upon his cross-examination were

improper, but were of little moment, and objections thereto were sustained by the court, and when any of them were answered without objection, the answer was stricken out by the court, and the jury instructed to disregard such testimony, no injury resulted from such improper questions, and a judgment of conviction of the defendant will not be reversed for alleged misconduct of the prosecuting officer in asking them.

ID.—IMPEACHMENT OF DEFENDANT—PREVIOUS CONVICTION OF FELONY.—Although it is not proper to show that the defendant was guilty of some other offense, for the purpose of raising a presumption, either of law or fact, of his guilt in the case under consideration, yet, when a defendant offers himself as a witness in his own behalf he may be asked, for the purpose of impeaching his evidence, if he has been convicted of a felony, or the fact, if it exists, may be shown by the record of the judgment.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. B. N. Smith, Judge.

The facts are stated in the opinion.

Blakely & Barber, for Appellant.

W. F. Fitzgerald, Attorney General, and Charles H. Jackson, Deputy Attorney General, for Respondent.

SEARLS, C.—The defendant was informed against for burglary alleged to have been committed in the county of Los Angeles December 4, 1896, by unlawfully, feloniously, and burglariously entering the house, room, and building of one Louisa Massett, with intent then and there to commit the crime of larceny.

Upon his plea of "not guilty" a trial was had and a verdict returned of guilty of burglary in the first degree, upon which verdict defendant was sentenced to imprisonment in the state prison at Folsom for a term of five years. Defendant appeals from the judgment and from an order denying his motion for a new trial.

The first point made for reversal is based upon the ruling of the court permitting an answer to the following question propounded to Peter McIntyre by the prosecution: "Q. Do you know whether the defendant had any trunks around that Dutchman's place over there, or around his own place?" The objection was that the question was "incompetent, irrelevant, and immaterial."

The answer to the question was: "I saw Mr. Steele [one of the arresting officers] had a trunk in the patrol wagon, loaded up, that I think he took out of the Dutchman's place from that old sack barn."

In answer to further questions the witness said he saw Mr. Talamantes (another police officer) look over some stuff, some clothes, which the policeman overhauled. He saw clothes. "I think I seen these clothes in the trunk" (alluding to exhibits in the case and identified as having been stolen).

To the better understanding of the question, and the pertinency of the testimony, it is proper to state that there had been evidence previously introduced tending to show that one Mrs. Louisa Massett was the landlady of the upper floor of the house, 804 South Olive street, and that one of the rooms on the floor was occupied by Mrs. Mary Rasmusen, who kept her clothing, etc., in a trunk placed in the hall. On the night of December 4th, Mrs. Rasmusen and one Mrs. S. Jensen went to bed a little after 10 o'clock P. M.

Shortly thereafter they heard a noise in the hall—footsteps and voices. The women gave an alarm, went on the front porch, called for the police, etc., two men ran down the stairs into and along the street, one of them with a sack on his back. The trunk of Mrs. Rasmusen had been rifled of clothing, an album, jewelry, etc. The clothing, album, etc., were found in a stable near defendant's house, owned by an old German, in which defendant kept his horse. Some jewelry was found in defendant's pocket. The clothing, album, and jewelry were identified as the property of Mrs. Rasmusen, and as having been taken from her trunk.

The officer who made the arrest, after telling of the finding the clothing in the stable, said: "At the time I arrested the defendant I asked him where he got all of those things, the exhibits in this case among them, and he said he found them in an alley; he said that he took them over to the Dutchman's place because he knew the officers were coming there to arrest him; the things were in a stable where he had a horse. I took some things out of his pockets at the time I arrested him."

Upon this testimony it was entirely proper for the prosecution to prove, if it could, as corroborative evidence that defendant was the owner of the trunk in which some of the stolen property was found, and there was no error in the ruling of the court.

The contention of the learned counsel for the appellant that defendant had been prosecuted on another charge of burglary, wherein it was alleged he had stolen a trunk, etc., was not disclosed by anything in the record, and had it been it would have been competent to show that he owned or claimed the trunk in question, as furnishing evidence of possession of its contents. For the reasons given, the motion to strike out the testimony of McIntyre was properly overruled.

It is further urged that the verdict of the jury was and is contrary to the law and the evidence. We have stated the substance of the evidence for the prosecution.

The defendant was a witness in his own behalf, and testified, in substance, that on the night of December 4th he worked from 9:30 to 11 o'clock P. M. He was at work for one Clarion putting shelving in a milliner's shop, and that he was not at the house on Eighth and Olive streets that night; that he went directly home on leaving Lernert's place.

William Lernert and Annie Clarion both testified that defendant worked for them in the milliner shop on December 4th until 11 or about 11 o'clock at night. On cross-examination defendant accounted for his possession of the stolen property by saying that he was a junk dealer, and that on the morning of December 5th he started out as usual and found the goods in question in a gunnysack, standing against a tree at Ninth and Olive streets, and that he put them in the barn because he "was afraid Minna Cota [a woman with whom defendant seems to have lived] would take them."

Upon the testimony, the foregoing of which is the substance, the jury was the sole judge as to the guilt or innocence of defendant. Having found him guilty, we do not feel called upon to disturb the verdict. The jurors may have disbelieved the testimony tending to prove an *alibi*, or, what is more probable, may have believed either that defendant's witnesses were mistaken as to the hour at which defendant ceased work, or that the witnesses for the prosecution were mistaken in supposing the burglary was committed earlier than 11 o'clock.

The fourth and last assignment of error is based upon the alleged misconduct of the deputy district attorney, who prosecuted the cause, in asking questions in cross-examination of the defendant, which were incompetent, etc., for the purpose of preju-

dicing appellant in the minds of the jury, as to which questions the said deputy knew an objection would be sustained.

The defendant had testified, as before stated, that he found the goods in an alley, etc. The deputy district attorney then asked him as to his finding other things, a trunk included, in the same vicinity; whether he took it home; whether Minna Cota helped him take it in; whether she was his wife; why he did not tell on his primary examination that he worked for Lernert that night.

Objections were sustained to all of these questions when such objections were interposed, and, when answered without objection, the answers were promptly stricken out by the court and the jury instructed to disregard such testimony.

We fail to see any injury to defendant by those questions; some of them were proper on cross-examination; others of them, while improper, were of little moment. (*People v. Kamaunu,* 110 Cal. 609.)

The only other questions grouped by the appellant with the foregoing, and apparently (although not specifically) constituting the head and front of the prosecutor's offense, were the following proposed to defendant: "Have you ever been convicted of a felony? A. Yes, sir, I have—yesterday." "What was the charge?' A. Burglary." This seems to have been stricken out.

At least, counsel for defendant had the answer to a succeeding question stricken out, and asked the court "to instruct the jury to disregard any evidence as to any other case." The court thereupon told the jury to "disregard the testimony in regard to any other case, if any has gone in." These last questions were proper to be put to the defendant on cross-examination.

Upon the trial of a defendant it is not proper to show him to have been guilty of some other offense for the purpose of raising a presumption, either of law or fact, of his guilt in the case under consideration. But when a defendant offers himself as a witness in his own behalf he becomes subject to most of the rules applicable to other witnesses, and among those, and for the purpose of impeaching his evidence, he may be asked if "he has been convicted of a felony," or the fact, if it exist, may be shown by the record of the judgment. (Code Civ. Proc., sec. 2051; *People v. Chin Mook Sow,* 51 Cal. 600; *People v. Amanacus,* 50 Cal. 233.) Prior to the adoption of the code such proof could only be made

by the record. (*People v. McDonald,* 39 Cal. 697; *People v. Rein-hart,* 39 Cal. 449.)

Upon the record we recommend that the judgment and order appealed from be affirmed.

Haynes, C., and Belcher, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

McFarland, J., Temple, J., Henshaw, J.,