[Crim. No. 1270. In Bank.—July 13, 1906.]

THE PEOPLE, Respondent, v. JOSEPH FELD, Appellant.

CRIMINAL LAW—APPEAL—ORDER REFUSING ARREST OF JUDGMENT.—An order refusing a motion in arrest of judgment is not appealable, and can only be reviewed upon appeal from the judgment.

ID.—MURDER—SUPPORT OF VERDICT—CONFLICTING EVIDENCE—PRESUMPTION.—Where there was evidence tending to support a verdict of guilty of murder in the first degree against the defendant, it must be assumed in support of the verdict that the evidence given for the prosecution was true, notwithstanding conflicting evidence to the

contrary on behalf of the defendant, and this court is powerless to interfere with the verdict of the jury under such circumstances.

ID.—MURDER IN FIRST DEGREE—SUFFICIENT SHOWING.—Where the evidence for the prosecution tended to show that defendant had been sued for a divorce by his wife, and had been ordered to pay alimony and counsel fees, that she was living with her father, that defendant went to her father's house harboring bitter feelings against his wife and her relatives, and with a deliberate intent to obtain entry by force and violence, if necessary, and that when her father impeded his entrance he deliberately shot him fatally with intent to kill him, he was properly found guilty of murder in the first degree.

ID.—EVIDENCE—ALARM OF INMATES—KNIFE FOR DEFENSE—HARMLESS RULING.—Where the son of deceased had testified without objection to the apparent alarm of the inmates of the house upon learning that defendant was seeking to gain admission, there was no prejudicial error in refusal of the court to strike out further evidence by him that when his father started from the kitchen to the door he handed witness a bread-knife, telling him to ''take it to protect himself,'' if it be conceded to be incompetent.

ID.—MISCONDUCT OF DISTRICT ATTORNEY—REJECTED OFFER OF EVIDENCE.—It was not misconduct of the district attorney to offer evidence to show the intention of defendant in going to the house of deceased, that he had previously brutally mistreated his wife, and did so after the shooting; and it was not prejudicial misconduct, after the disallowing of the evidence, to repeat such offer before closing his case, where the court specially charged the jury to consider only the admitted evidence, and to disregard any impression or idea otherwise suggested by questions or statements of counsel.

ID.—MISCONDUCT IN ARGUMENT.—*Held*, upon review of affidavits charging the district attorney with misconduct in his closing argument, and of the counter affidavit of the district attorney, there was no such showing of misconduct as would warrant a reversal.

ID.—MISCONDUCT IN PROOF—THREAT OF DEFENDANT—MOTIVE.—It was not misconduct for the district attorney to prove in rebuttal, with permission of the court, a conversation between defendant and his wife in presence of a witness, in which he made threats against the wife, about two months before the homicide, as to what he would do before he would give her any money. Such evidence was admissible, as tending to show the motive of the defendant in visiting the house at the time of the homicide.

ID.—REQUEST COVERED BY CHARGE.—The court did not err in refusing a request covered by another instruction on the same subject given by the court.

ID.—MISLEADING REQUEST—RIGHT TO VISIT CHILD.—A request for an instruction as to the right of the defendant to visit his minor child wherever it might be, which under the evidence might imply his

CXLIX Cal.—30

right to enter the house of another by force for that purpose, was properly refused. as tending to mislead the jury. It is sufficient that his right peaceably to visit his. child was recognized in the charge of the court.

ID.—ARGUMENTATIVE REQUEST—PUBLIC SENTIMENT.—It was not error to refuse a long argumentative request warning the jury against being influenced by public sentiment, where no necessity appears in the record for such special admonition, and the jury was elsewhere instructed that the verdict must be the unbiased, independent verdict of each juror, uninfluenced by any consideration except the evidence received, the law declared, and the arguments thereon.

ID.—NEW TRIAL—NEWLY DISCOVERED EVIDENCE—DISCRETION.—A motion for a new trial upon the ground of newly discovered evidence is addressed to the sound legal discretion of the trial court, whose discretion in determining whether the evidence produced on the motion is such as to render a different result probable will not be disturbed where the record shows no abuse of discretion or error of the court in its conclusion.

ID.—DISCOVERY OF KNIFE.—Where a bread-knife, claimed to have been in the hands of the deceased, had been described at the trial sufficiently for all purposes of the defense, its discovery after the trial beneath the house of deceased is not ground for a new trial merely for the purpose of enabling it to be introduced in evidence.

ID.—MISCONDUCT OF JURY—READING NEWSPAPER ARTICLES—PRESUMPTION — INSUFFICIENT AFFIDAVIT — INFORMATION AND BELIEF. — A charge of misconduct of the jurors in reading newspaper articles making general comments is not made out where there is no proof that they were read by the jurors during the trial. There is no presumption from their publication in a particular newspaper that they were so read. An affidavit upon information and belief that they were read by jurors is utterly valueless, and constitutes no evidence of that fact.

ID.—IMPEACHMENT OF JURORS—FAILURE TO DENY INSUFFICIENT AFFIDAVIT.—The jurors cannot be impeached by their mere failure to deny the insufficient affidavit based upon information and belief as to their misconduct.

ID.—HARMLESS ARTICLE AS TO QUALIFICATION OF JUROR.—A harmless article commending the qualification of a particular juror, which if read could not prejudice the jury, and which was not partisan in its nature, is not ground for new trial.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from orders denying a new trial and denying a motion in arrest of judgment. Frank H. Dunne, Judge.

The facts are stated in the opinion of the court.

William H. Alford, J. A. Spinetti, and Theo. J. Roche, for Appellant.

The evidence is insufficient to justify the verdict, as it clearly shows the killing was accidental, and justifiable homicide was clearly proven upon undisputed evidence. (*People* v. *Sherman,* 103 Cal. 409-412, 37 Pac. 388; *People* v. *Hecker,* 109 Cal. 462-464, 42 Pac. 307.) If the firing of the accidental shot was in any way criminal, it was at most committed upon a sudden quarrel, in the heat of passion, and under no circumstances could exceed manslaughter. (Pen. Code, sec. 192.) The court exercised an arbitrary discretion in denying the motion for a new trial for newly discovered evidence which had sufficient legal ground, and its discretion must be legal, and not arbitrary. The ends of justice must be subserved. (*People* v. *Superior Court,* 5 Wend. 114; *Tripp* v. *Cook,* 26 Wend. 152; *Faber* v. *Bruner,* 13 Mo. 543; *Bailey* v. *Taaffe,* 29 Cal. 422; *Lybecker* v. *Murray,* 58 Cal. 189; *Stringer* v. *Davis,* 30 Cal. 322; *People* v. *Lapique,* 136 Cal. 503, 69 Pac. 226; *People* v. *Stanford,* 64 Cal. 28, 28 Pac. 106; *Oberlander* v. *Fixen,* 129 Cal. 690, 62 Pac. 254; *O'Rourke* v. *Vinnekohl,* 104 Cal. 254, 37 Pac. 930; *Spottswood* v. *Weir,* 80 Cal. 448, 22 Pac. 289; *Kenezleber* v. *Wahl,* 92 Cal. 218, 28 Pac. 225; *Blewett* v. *Miller,* 131 Cal. 149, 63 Pac. 157; *State* v. *Lowell,* 123 Iowa, 427, 99 N. W. 125; *Waite* v. *Fish,* 17 S. D. 215, 95 N. W. 928; *Parsons* v. *Lewiston etc. Ry. Co.,* 96 Me. 503, 506, 52 Atl. 1006; *Clark* v. *Gallagher,* 74 Vt. 331, 52 Atl. 539; *Standard Investment Co.* v. *Hoyt,* 164 Mo. 124, 63 S. W. 1093; *Hotchkiss* v. *Patterson,* 5 Kan. App. 358, 48 Pac. 435.) The court should have granted the motion for misconduct of the jurors not denied. (*People* v. *Stokes,* 103 Cal. 193, 42 Am. St. Rep. 102, 37 Pac. 207; *People* v. *Chin Non,* 146 Cal. 561, 80 Pac. 681; *People* v. *McCoy,* 71 Cal. 395, 12 Pac. 272; 2 Thompson on Trials, p. 1981, sec. 2617.) The new trial should have been granted for misconduct of the district attorney. (*People* v. *Sing Lee,* 145 Cal. 190, 78 Pac. 636; *People* v. *Bowers,* 79 Cal. 417, 21 Pac. 752; *People* v. *Wells,* 100 Cal. 459, 34 Pac. 1078; *People* v. *Valliere,* 127 Cal. 65, 59 Pac. 295; *People* v. *Devine,* 95 Cal. 227, 30 Pac. 378; *People* v. *Lee Chuck,* 78 Cal. 328, 20 Pac. 719.) The court erred in refusing the requests of defendant. Each party has an abso-

lute right to instruction based on its own theory of the case if there is any evidence to support it. (*Buckley* v. *Silverberg,* 113 Cal. 681, 45 Pac. 804; *People* v. *Taylor,* 36 Cal. 255; *People* v. *Hecker,* 109 Cal. 451, 42 Pac. 307; *Stanton* v. *French,* 83 Cal. 194, 23 Pac. 355; *People* v. *Conkling,* 111 Cal. 616, 44 Pac. 314.)

U. S. Webb, Attorney-General, and C. N. Post, Assistant Attorney-General, for Respondent.

The testimony for the prosecution sustains the verdict, which cannot be disturbed upon appeal because of conflict. (*People* v. *Maroney,* 109 Cal. 279, 41 Pac. 1097; *People* v. *Gonzales,* 143 Cal. 606, 77 Pac. 448; *People* v. *Donnolly,* 143 Cal. 398, 77 Pac. 177; *People* v. *Fitzgerald,* 138 Cal. 41, 70 Pac. 1014; *People* v. *Buckley,* 143 Cal. 379, 77 Pac. 169.) An application for new trial for newly discovered evidence should be regarded with distrust and disfavor. (*People* v. *Sutton,* 73 Cal. 243, 15 Pac. 86; *People* v. *Howard,* 74 Cal. 547, 16 Pac. 394; *People* v. *Freeman,* 92 Cal. 359, 28 Pac. 261; *People* v. *Gonzales,* 143 Cal. 606, 607, 77 Pac. 448; *People* v. *Rushing,* 130 Cal. 449, 80 Am. St. Rep. 141, 62 Pac. 742; *People* v. *Warren,* 130 Cal. 685, 63 Pac. 86.) Such applications are addressed to the discretion of the trial court, which must be presumed to have been properly exercised. (*People* v. *Urquidas,* 96 Cal. 241, 242, 31 Pac. 52; *People* v. *Benc,* 130 Cal. 167, 62 Pac. 404; *People* v. *Warren,* 130 Cal. 683, 63 Pac. 86; *People* v. *Demasters,* 109 Cal. 607, 42 Pac. 236; *People* v. *Buckley,* 143 Cal. 392, 77 Pac. 169.) Affidavits of misconduct of jurors upon information and belief were inadmissible as insufficient for any purpose. (*People* v. *Findley,* 132 Cal. 301, 64 Pac. 472; *Youle* v. *Brown,* 49 Ill. App. 102; *Marzen* v. *People,* 190 Ill. 81, 60 N. E. 102; *State* v. *Murphy,* 13 Wash. 229, 43 Pac. 44.) The offer of evidence by the district attorney was not misconduct. The offered evidence was admissible. (*People* v. *Craig,* 111 Cal. 468, 44 Pac. 186; *People* v. *Walters,* 98 Cal. 138, 32 Pac. 864; *People* v. *Ebanks,* 117 Cal. 652, 49 Pac. 1049; *People* v. *Wilson,* 117 Cal. 691-693, 49 Pac. 1054; *People* v. *Suesser,* 142 Cal. 367, 75 Pac. 1093.) There was no misconduct in argument. (*People* v. *Owens,* 132 Cal. 469, 64 Pac. 770.) Objection to language used should have been urged upon the attention of the court.

(*People* v. *Frigerio*, 107 Cal. 151, 40 Pac. 107.) The requested instructions not covered by the charge were objectionable as misleading and argumentative and collateral to the issue. (*People* v. *Conkling*, 111 Cal. 616, 44 Pac. 314; *People* v. *Harris*, 125 Cal. 96, 57 Pac. 780; *People* v. *Honshell*, 10 Cal. 83.)

ANGELLOTTI, J.—The defendant was convicted of the crime of murder in the first degree, for the killing of one Fritz Dirking, and adjudged to suffer death. He appeals from the judgment and from orders denying his motions for a new trial and in arrest of judgment.

1. The law gives no appeal from an order denying a motion in arrest of judgment. Any error in the action of the trial court in that regard is reviewable upon appeal from the judgment. It is not claimed, however, that there was any error in denying the motion in this case.

2. It is claimed that the evidence was insufficient to justify the verdict. A brief review of some of the evidence will suffice to show that the record will not support this claim.

The defendant, who at the time of the homicide, November 2, 1903, was a police officer of the city and county of San Francisco, was a son-in-law of the deceased, having married his daughter some three years before. There was one child by this marriage, a little girl then about two years old. The defendant and his wife had been living separate and apart for nearly two months immediately preceding the homicide, the wife, with the child, residing at her father's home during this period. She had commenced divorce proceedings, which were then pending. There had been a previous separation some few months before, and previous divorce proceedings.

There was some evidence tending to show that defendant entertained feelings of bitterness toward both his wife and her family, and that on one or two occasions he had expressed such feelings when it was suggested that he should contribute to her support, one witness testifying that a few months before the homicide he told his wife he would not give her a cent, and when she suggested he might be compelled to, he said, "No—I will fix you and your whole family first."

During the afternoon of the day of the homicide he was served by his wife's attorney, Mr. Hayes, with a copy of an

order requiring him to pay his wife counsel fees and alimony.
Hayes testified that the defendant then said to him: "I am
going out to see that child. I want to see it to-night and if
I. don't see it there will be a rough-house, and if that ———
——— mother of hers says a word I will give her a clout in
the jaw too."

The defendant that evening went to the home of deceased,
arriving there in the neighborhood of seven o'clock. Defend-
ant testified that the sole object of his visit was to see his
child, whom he had not seen for a month; that he had for
several days been endeavoring to obtain, through his own
attorney, the consent of his wife that he should so do; and
that he had finally, on that day, communicated with her by
telephone and told her that he was coming out after supper
to see the child, and she had said it was all right. Other
evidence was such, however, as to warrant the jury in con-
cluding that no consent to his visit had been given, and that
he went to the house not on the peaceable mission of merely
seeing his child, but in an ugly frame of mind, inflamed by
the service on him of the order for alimony and counsel fees,
and bent on making a "rough-house" of it, as suggested in
the statement testified to by Hayes.

If he did telephone to his wife before going out, as the
evidence indicates, it is not believable that the message was
of the nature testified to by him, or that she consented to his
coming, for his arrival on the premises apparently greatly
alarmed the occupants of the house.

The home of deceased was the lower flat of a two-story house.
In the kitchen thereof, which opened on the back yard, were
the deceased, his wife, defendant's wife, and her brother.
Defendant came into the back yard along a driveway which
ran therefrom to the street, along the north side of the house.
Mrs. Feld, crying "Here he comes," ran to the kitchen-door
and locked it. The defendant, after trying to open this door,
went around to the front door of the house, whither the two
women, carrying the child, also ran through the hallway of the
house, their object, as testified to, being to go out through
that door and thence to the upper flat. There was evidence
tending to show that when that door was opened the defendant
appeared, having come from the rear, and that when it was
attempted by those inside to close the door, he prevented them

from so doing by means of an iron bar which he had. There was also evidence tending to show that defendant attempted to gain admission to the house by force, and that the deceased, who had also come to the door and was attempting to prevent his entrance, was, during the attempt of defendant to enter, struck on the head by the bar held by defendant, and that when he told the defendant he had better go away from the house, the defendant stepped back a few feet, drew his revolver and fired the fatal shot, the bullet entering the left breast of deceased and causing his death the next morning.

There was in this sufficient warrant for the conclusion of the jury that the defendant had gone to the home of deceased harboring feelings of bitterness against his wife and her relatives, and with a deliberate intent to obtain entry by force and violence if necessary, and that when he found his progress in that direction impeded by deceased, he, for that reason alone, deliberately and premeditatedly, fired the fatal shot with intent to kill him. Under such circumstances, he would undoubtedly be guilty of murder in the first degree. There was, it is true, evidence at variance with that sustaining the theory above stated, but the utmost effect thereof was to produce a mere conflict of evidence, and it is certainly unnecessary here to cite authorities to sustain the proposition repeatedly enunciated by this court, to the effect that the appellate court is powerless to interfere with the verdict of the jury under such circumstances. Assuming the evidence given in support of the theory of the prosecution to be true, as we must assume in view of the verdict and the order denying a new trial, the verdict cannot be disturbed on the ground of insufficiency of evidence to support it.

3. The son of the deceased testified that when his father started from the kitchen to the front door he handed him a bread-knife "and told him to take it to protect himself." Defendant moved that the quoted portion be stricken out, and his motion was denied. The claim is that it was incompetent, being no part of the *res gestæ,* and being a statement not made in the presence of the defendant. If it be admitted that this evidence was incompetent, we cannot see that it added in the slightest degree to the effect of the other evidence of the witness, which had already been received without objection, relative to the apparent alarm of

the inmates of the house upon learning that defendant was outside seeking to gain admission. The error, if any, was therefore without prejudice.

4. The district attorney, for the purpose of showing the intention of defendant in going to the home of deceased on the night of the homicide, and his feelings toward the inmates thereof, endeavoring to show that he had brutally mistreated his wife both before that time and also immediately after the shooting, when he gained admission to the house. Objections to this line of testimony were sustained, after the district attorney had quite fully stated in the presence of the jury the nature of the proposed testimony. Before closing his case the district attorney recalled certain witnesses and was allowed by the court, over the objection of defendant, to state that he desired to show by them that defendant prior to the homicide made threats against his wife, and had mistreated her immediately after the homicide, upon gaining admission to the house. The court sustained an objection to this offer, but it is urged that the conduct of the district attorney in making such offer was misconduct prejudicial to the rights of defendant.

It is unnecessary here to discuss the claim made by the attorney-general to the effect that the proposed testimony was admissible. If we assume that it was not admissible, we cannot hold that the mere offer thereof was prejudicial, in view of the fact that it was already practically before the jury so far as an offer to prove certain matters places those matters before a jury. The second offer was the same in effect as the first, and if the jury sworn to try the case on the admitted evidence alone would allow itself to be influenced by statements of attorneys not supported by evidence actually admitted by the court, the prejudice to defendant was fully created by the first offer, and could not have been enhanced by the second. The question as to the admissibility of such evidence was at least a debatable one, there being strong ground for holding it admissible, and it cannot reasonably be pretended that there was any misconduct on the part of the district attorney in originally seeking to introduce the proposed evidence. Nor would we be warranted in assuming from the record in this case that the jury, in disregard of their oaths, may have been influenced to the prejudice of.

defendant by either offer. They were specially instructed by the court to consider only the admitted evidence, and to disregard and discard every impression or idea otherwise suggested, including questions asked by counsel to which objections were sustained, and statements by counsel.

5. The trial court did not err in the matter of instructions to the jury.

The instructions requested by defendant upon the subject of accidental homicide were fully covered by another instruction given by the court.

The requested instruction to the effect that the defendant had as much right to the custody of his minor child, and as much right to enjoy the society and company of such minor child, as had his wife, and that he had "a perfect right, at all reasonable times, to visit said minor child wherever such minor child may have been" was properly refused. The quoted portion of the instruction might be understood by the jury, under the evidence in this case, as implying that defendant had the right, for the purpose of visiting his child, to use such force as was necessary to effect an entrance to the house of deceased, even to the extent of deliberately taking life, which, of course, is not the law, and hence the instruction might have been misleading. The defendant undoubtedly had the legal right to see his child at all reasonable times, but if he was denied this right by others, his remedy was to be found in an application to the courts, and in no event could he take the law into his own hands and resort to force and violence, much less to the taking of human life. (See *People* v. *Harris,* 125 Cal. 96, [57 Pac. 780].) There was no question in the case as to the legal right of the father to visit his child. The court instructed the jury that where husband and wife were living apart neither had a superior right to the custody of the children of the marriage, and also, that if the defendant called at the house for the purpose of seeing his child, and, as he was about to enter, was attacked by deceased under such circumstances as to make it apparent to him as a reasonable man that it was necessary to shoot deceased in order to save his own life or prevent great bodily injury, and so in good faith believing, shot the deceased, he must be acquitted; and also, that if, at such time, the fatal shot was accidentally fired in a scuffle,

he must be acquitted. There was no pretense that a visit by defendant to the house where his child was, for the sole purpose of peaceably entering and seeing the child, was not a lawful mission, and the instructions given clearly indicated to the jury that such a visit would have been entirely lawful.

There was no error in refusing to give the long and argumentative requested instruction, warning the jury against being influenced by public sentiment. We find no necessity evidenced by the record for any such special admonition, and the jury were elsewhere told that any verdict rendered must be the unbiased and independent verdict of each member of the jury, based solely upon his individual judgment, and uninfluenced by any considerations whatever, except the evidence received, the law declared, and the arguments thereon.

6. The defendant moved for a new trial upon various grounds, including newly discovered evidence and misconduct of jurors.

It is well settled that to justify the granting of a new trial upon the ground of newly discovered evidence, the evidence newly discovered must be such as to render a different result probable in the event of a new trial. This we understand to be conceded by counsel for appellant. New trials should be granted on this ground only for the purpose of doing substantial justice, and not simply for the purpose of enabling defendant to introduce evidence which is of such a nature and character that there is no reason to believe that the verdict would have been different, had such evidence been before the jury. It is also settled that such motions are addressed to the sound discretion of the trial court, and that its action will not be disturbed unless the record shows an abuse of this discretion, the presumption being that the discretion was properly exercised. The question as to whether the evidence produced on the motion is such as to render a different result probable is one peculiarly addressed to the discretion of the trial judge, who, in the light of the knowledge afforded by presiding at the trial, is especially qualified to determine as to the probable effect of such evidence. (*People* v. *Sing Yow,* 145 Cal. 1, 4, [78 Pac. 235]; *People* v. *Buckley,* 143 Cal. 375, 392, [77 Pac. 169].)

Bearing in mind these well-settled propositions, a brief statement as to the showing made by the affidavits produced,

will suffice to indicate that the action of the trial court, so far as this ground is concerned, cannot be disturbed.

Certain affidavits presented were to the effect that, nearly a month after the trial, a knife was found under the house of deceased by a man who was there engaged in doing some work. This knife was identified by defendant as a knife which belonged to deceased and was used by his family, and as a knife which he claimed deceased had in his hand at the time of the homicide. The son of deceased had testified on the trial that at the time defendant was heard outside the house he put a bread-knife, ten or eleven inches long and pointed at the end, into the hand of deceased, and defendant had testified that at the commencement of the difficulty deceased advanced upon him with a knife, and that after the shot deceased pursued him with the knife still in his hand. The knife disappeared immediately after the homicide, and although search and inquiry had been made regarding the same, was not found until discovered under the Dirking house, where it had apparently been concealed, but by whom does not appear.

We cannot see that the discovery of this knife under the house of deceased warranted a new trial. Certainly a new trial should not be granted merely for the purpose of enabling the knife, claimed to have been in the hand of deceased at the time of the homicide, to be introduced in evidence. It had been sufficiently described at the trial for all the purposes of the defense, and its mere production and identification as the very weapon claimed to have been in the hand of deceased could not add in the slightest degree to the effect of the evidence tending to show that deceased had a knife in his hand. Nor was the mere fact that it was found, apparently concealed, under the Dirking house, at all material to the issues involved in the case. That fact might possibly warrant the inference that some member of the family, for some reason thinking that the production of the weapon would in some degree tend to assist defendant's cause, had concealed it for the purpose of suppressing evidence favorable to defendant, and thus be evidence sufficient to discredit the person who had concealed it, if he or she could be ascertained and was a witness against the defendant, but it could have no other effect. It was not legitimate evidence to show that

deceased had the weapon in his hand at the time of the affray. And as long as it could not be shown by whom it was concealed, it could not serve to constitute evidence impeaching any particular witness.

On the trial, there was evidence tending to show that when defendant appeared at the front door of the Dirking house he had an iron bar, with which he attempted to force open the door, and with which he inflicted a blow on the head of deceased. Defendant testified that he did not have any such weapon when he came to the door, and that Mrs. Dirking had it in her hand, and in endeavoring to strike him with it, struck her husband, and he, defendant, took it away from her and threw it down. A bar was identified as the one used on this occasion. The record does not show that there was anything in the appearance of this bar to distinguish it from any other iron bar about the same size. In support of the motion for a new trial, two affidavits were presented, one deponent stating that as late as January, 1902, a year and ten months prior to the homicide, he was acquainted with the tools of deceased, kept in the rear of his premises, having occasionally used some of them, and that either this bar, or one precisely like it, was among those tools, and the other testifying to a similar condition existing as late as June, 1902, a year and five months prior to the homicide.

The contents of these affidavits were such that we cannot say that the judge of the trial court was not fully warranted in concluding that the evidence of the new witnesses would not operate to change the result in the event of a new trial. In this connection, it may also be suggested that even if the iron bar was one of the tools of deceased, kept in the rear of his premises, the defendant when in the back yard before going to the front door, could have taken it from that place.

What has been said in regard to the affidavits relative to the iron bar, is also true as to the only other affidavits presented. There is no reason to believe that the verdict would have been different if this evidence had been before the jury.

We are of the opinion that it cannot be held that the trial court erred in concluding that the showing as to newly discovered evidence was not such to warrant the granting of a new trial.

The alleged misconduct of jurors charged was the alleged

reading by all the jurors of certain newspaper articles. The newspaper articles were two in number, and were published in the San Francisco Examiner during the progress of the trial and the day before the case was submitted to the jury. One was an editorial, headed "It is time to stop the wanton slaughter of innocent women," which commented unfavorably upon juries in certain cases, where persons charged with killing or assaulting women had, in the opinion of the writer, been too leniently dealt with.

The other was a news article, headed "Ex-policeman a juror for Feld. Sergeant Wright, retired, is among the twelve accepted to try young patrolman who killed his father-in-law. Counsel indicate that prisoner whose life is in the balance will depend on a plea of self-defense for acquittal." This article, in addition to giving what was apparently a fair account of the previous day's proceedings of the trial, and a statement as to the probability that the defense would be self-defense, in a subdivision headed "Comment about juror," stated that there had been some comment on the fact that C. P. Wright, a former member of the police department, had been accepted as one of the jurors to try defendant, who was on the police force at the time of the shooting. It quoted the trial judge as saying in an interview that he was rather surprised that' neither side had challenged nor excused him, but that he had found on inquiry that Mr. Wright had served on other juries in other departments and had given excellent satisfaction— that the fact that a man had served on the police force did not disqualify him for jury service, and that police training ought to make a good juror. That if the defendant had been charged with murder for killing done in the performance of police duty, it might be expected that the sympathies of any juror who had been a member of the police force would naturally be with him, but that there was no sentiment of that kind involved in this case; that the questions asked of Mr. Wright showed that he did not know the defendant and had never had any dealings with him; and that in any event the prosecution accepted the juror, and the court should not interfere. The district attorney was also reported as saying that he regarded Sergeant Wright as an excellent juror.

We have not considered it necessary to state the contents of the editorial, for there is no evidence that any juror read

it or heard of it until after the rendition of the verdict. It has been declared that newspaper articles may be of such a nature that the reading thereof by jurors during the progress of a trial will require the granting of a new trial. (*People* v. *McCoy,* 71 Cal. 395, 397, [12 Pac. 272] ; *People* v. *Stokes,* 103 Cal. 193, 199, [42 Am. St. Rep. 102, 37 Pac. 207] ; *People* v. *Chin Non,* 146 Cal. 561, [80 Pac. 681].) It, however, devolves upon the party moving for a new trial on this ground to show that such articles have come to the knowledge of the jurors, for, unless they have, prejudice could not possibly have resulted to the defendant by reason of the publication, and the burden is on him to show any substantial cause that may exist for the granting of a new trial. It cannot be held that evidence showing the publication of articles in newspapers during a trial raises any presumption that such articles have come to the knowledge of the jurors. It is their duty to abstain from reading any articles relative to the case they are trying, and from talking to any one or allowing any one to talk to them concerning the case, and to refrain from allowing themselves to receive any information or impression concerning the case from any source other than the evidence, arguments, and instructions given in open court, and the presumption is that they have fully performed their duty. (See *Sheehan* v. *Hammond,* 1 Cal. App. 2, [84 Pac. 340].)

The only allegations as to this contained in the affidavits presented by defendant, were made solely on the information and belief of the deponents. For this reason they were utterly valueless, and constituted no evidence whatever that any juror had ever read or heard of either article. (*People* v. *Findley,* 132 Cal. 301, [64 Pac. 472] ; *Gay* v. *Torrance,* 145 Cal. 144, 151, [78 Pac. 540].) They were simply charges without proof to sustain them, no denial or evidence in reply was under the law required, and a failure to deny them would in no degree tend to establish their truth. It is contended that an affidavit of the twelve jurors, which was presented by the district attorney in reply to defendant's motion, was of such a nature as to establish the fact that the jurors had read the editorial. In this connection, defendant relies on the rule declared in *People* v. *Chin Non,* 146 Cal. 561, [80 Pac. 681], to the effect that the rule against allowing a juror to impeach his own verdict is not applicable where the district attorney introduces

the juror's affidavit, and that in such event he, on behalf of the people, waives the benefit of the rule excluding such evidence. In the Chin Non case the jurors expressly stated in the affidavits presented by the district attorney that they had read the newspaper articles there involved, and it was sought to show by the further statements in the affidavits that such articles had not influenced them in arriving at a verdict. In this case, while there was in the joint affidavit of the jurors no express denial of the information-and-belief allegation that they had read the editorial, there was no express acknowledgement thereof, as in the Chin Non case, nor was there any statement therein which would warrant the inference that the editorial had come to the knowledge of any of them until after the verdict. Every statement therein contained is entirely consistent with a conclusion that the editorial had not come to their knowledge until after verdict. The conclusion of defendant's counsel to the contrary is based entirely on the fact that while, by this affidavit, certain allegations of defendant's affidavits were denied, nothing was said therein concerning or in reply to the allegation as to the reading of the editorial by the jurors. It is contended that, in the presence of this opportunity on the part of the district attorney and the jurors to deny such allegation, if the facts were such as to enable a denial to be made, the failure to so do is, in effect, an express admission on the part of the district attorney that the undenied allegation was true.

When it is borne in mind that the charges of misconduct were not so supported as to require answer of any kind, that there was no evidence of misconduct therein, and that the jurors' affidavits alone must be looked to for evidence of misconduct, it must be apparent that the only misconduct shown is such as is shown by the affirmative allegations of such affidavit, or such as must be necessarily inferred from such allegations, and the district attorney, by introducing such affidavit admitted no more at most than what is so affirmatively alleged, or necessarily inferable from such allegations. We are of the opinion that the exception declared in the Chin Non case to the general rule prohibiting the impeachment of his own verdict by a juror, should not be extended so as to allow such impeachment to be accomplished solely by the mere failure of the juror to deny certain information-and-belief allega-

tions of misconduct, even though such failure be accompanied by an express denial on his part of other information-and-belief allegations of misconduct.

So far, therefore, as the editorial was concerned, there was no showing warranting the granting of a new trial. We have assumed, in what we have thus far said, that the article was of such a nature that it might have influenced jurymen in this case. The article contained no reference to this case, but was a general article relative to failures of justice in cases of crime against women. Whether, by reason of the special circumstances of this case, the trial court would have been warranted in holding that it was of such a nature that the mere reading thereof may have influenced this jury, is indeed very doubtful, but, in view of what has already been said, it is unnecessary to decide this question.

The showing as to the knowledge by the jurors, before verdict, of the other newspaper article, the news article, is precisely the same as the showing in regard to the editorial, except in the single case of the juror Wright who is discussed therein. As to the other eleven jurors, therefore, the showing did not warrant a new trial, for the reasons already stated. As to this article, it must also be held that, so far as the jurors not named therein are concerned, there is absolutely nothing therein from which it could be reasonably concluded that any juror might have been influenced thereby. The article was in no degree partisan, and was, in addition to the comments on juror Wright, apparently only an exceedingly fair report of the previous day's proceedings. Of course, as already stated, jurors should not read any article concerning the case they are trying, but no prejudice could possibly have been suffered by defendant from a reading by such jurors of this article.

An affidavit of juror Wright was filed by the district attorney, in which Wright stated that some one had called his attention to the fact that an article had been published about him, and he merely replied, ''Oh, that does n't hurt me, the judge gave me a good send-off.'' This is the only legal evidence serving as a basis for the conclusion that he had knowledge of the article or any portion thereof. It may be assumed that this was sufficient to show such knowledge. We, however, are unable to see anything in the comments on Wright contained in the article, or in the remarks attributed

by the article to the trial judge and the district attorney concerning him, that would warrant a conclusion that he might have been influenced thereby in the discharge of his duties as a juror.

An affidavit as to juror Wright, made by Clarence Gray, was filed on the part of the defendant. The allegations contained in this affidavit were specifically denied in the affidavit of Wright. The issues of fact thus made were for the trial court to determine, and such determination is conclusive here.

It cannot be held that the court erred in concluding that there was no sufficient showing of misconduct of jurors to warrant a new trial.

7. Upon the motion for a new trial, the affidavit of defendant's attorneys was presented, charging misconduct on the part of the district attorney in making alleged unwarranted statements in his closing argument.

We have examined them, and, taking into consideration the reply affidavit filed by the district attorney, cannot say that there is any such showing of misconduct in the closing argument as would warrant a reversal.

We have, in a previous portion of this opinion, discussed the efforts of the district attorney to prove mistreatment of his wife by the defendant both before and immediately after the killing of deceased, and his second offer in regard thereto, and have held that there was no misconduct in the first offer and no prejudicial misconduct in the second. Nor can it be held that there was any misconduct in asking Mrs. Quarles in her examination in rebuttal as to a conversation between defendant and his wife in her presence, about two months before the homicide, in which he made a threat against his wife relative to what he would do before he would give her any money. Under the circumstances of the case, we think the evidence was admissible as tending to show the motive with which he visited the house of deceased on the evening of the homicide, and this was apparently the view of the trial court, for an objection to the question was overruled.

There is no other specification of misconduct on the part of the district attorney requiring notice.

We have now considered all the points made for a reversal, and find no legal ground upon which the judgment of the trial court may be set aside, or a new trial granted.

CXLIX Cal.—31

The judgment and order denying a new trial are affirmed.

Shaw, J., Hall, J., Sloss, J., Lorigan, J., and Henshaw, J., concurred.

NOTE.—Justice McFarland being unable to act, Justice Hall, one of the justices of the district court of appeal for the first appellate district, participates herein *pro tempore*, pursuant to section 4 of article VI of the constitution.

Rehearing denied.