[Crim. No. 587. Fourth Dist. Apr. 8, 1948.]

THE PEOPLE, Respondent, v. JOE NANEZ et al., Appellants.

J. M. Lopes for Appellants.

Fred N. Howser, Attorney General, Robert K. Meyers, District Attorney, and Russell R. McKinney, Deputy District Attorney, for Respondent.

GRIFFIN, J.—Defendants and appellants, brothers, were charged with and were convicted by a jury of the crime of burglary, first degree, with intent to commit rape.

On the night of July 30, 1947, Mrs. Bertoldo lived with her husband and two daughters, Virginia, aged 15, and Helen, in a little house in Visalia. About 12 o'clock midnight, someone came to the kitchen, turned on the light, closed the bedroom door leading to the bedrooms occupied by her and her husband. Virginia was sleeping on a couch in an adjoining room. The screen door was opened and a chair was put against it to hold it open. Mrs. Bertoldo coughed. She then heard someone run out through the kitchen and turn out the light. She arose and noticed the two defendants outside talking. She latched the kitchen door and ran to the nearby home of her son for help. Defendant Joe Nanez, a nephew of Mrs. Bertoldo, came up to her and said he wanted to see his Aunt Teresa. She told him he better leave or he would wake up in jail. Defendants left in the car. She closed the doors, latched them, and went to bed. About 3 a. m. she was awakened and opened the curtains leading to Virginia's room. She heard her scream and defendant Nanez had her by the neck choking her; he ran out of the house, jumped in the car which was "ready to pull out right away" and the two defendants left. The officers were called. A neck chain and cross Virginia was wearing was found broken on her bedroom floor.

Virginia testified that she did not hear defendant (Joe) the first time he came to her house that night; that sometime during the night, however, she found she could not breathe and she was suddenly awakened when Joe grabbed her by the neck.

Officers appeared at the home and the family were all excited. The door casing near the latch had been defaced with a knife. The defendants were found parked in their car asleep several miles up the road. They were placed under arrest. At that time there was no evidence of their staggering or of their drunkenness.

At the trial strenuous objection was made to the admission of their claimed conversation with the officers and of a signed written statement. A conversation with Corralez was related by the officer who stated that Corralez told him that Joe had suggested they go out to the Bertoldo residence and get Virginia and take her to a quiet place he knew of and at that point they were to rape her; that they went to her residence; that he remained in the car; that Joe gained entrance to the house in some manner unknown to him; that Joe said he would keep Virginia quiet but that Joe didn't do a very good job because he heard her scream; that the lights came on and Joe ran out to the car, jumped in and said: "Step on the gas. We better get out of here." It was stipulated that this statement was binding only against Corralez, and the court so instructed the jury. On cross-examination the officer testified that Corralez stated that about a week before, Joe had gone to his cousin's home, knowing his cousin was uptown, and sat on the bed occupied by the cousin's wife; that the cousin came home and they had a fight.

The court interpreter then testified, over objection, that on the morning of July 30th, he and the sheriff questioned the defendants separately; that Corralez stated that he and his brother Joe had been doing a little drinking; that they went to the Bertoldo home and were chased away; that they had a few more drinks and that they recalled a fight between Joe and the cousin; that Joe then took a beating and that the more "we thought of it" the "sorer we got," so he says "we talked it over and we had this grudge, we were going back to the house, and we planned then that Joe was going to break into the house and Joe was going to get Virginia and that I was to be in the car with the motor running, so we could make a quick get-away and he would bring Virginia out into the car and we would go out on the roadside and rape her," as revenge for the fight they had out there the week before.

He then testified that Joe Nanez was questioned; that they duly admonished him that anything that he would say could be used against him and that the defendant's statements were free and voluntary; that Joe said he and his cousin Pete had

had a fight the week before about a taxicab fare; that he went to Pete's home to tell his wife that her husband might be thrown in jail; that he had been in there "since the lights were out" and was in there only five minutes when Pete came home and "beat him up"; that he didn't think he had that beating coming; that he and Gilbert went out the first time to the Bertoldo home to pick a fight with them and were chased away; that after a few drinks they began to think about this fight and being beat up the week before and they agreed that they would go back again and go into the house and "get Virginia and bring her out" to the car, and Gilbert was to wait for him with the motor running so they could make a get-away and get her out on the roadside and rape her; that he walked into the house, grabbed Virginia by the neck and choked her; that she screamed and awakened her mother; that he ran out to the car and told Gilbert to "get away from here"; that they drove up the road and were arrested a few minutes later.

It was stated by the deputy sheriff that while they were booking the defendants and while they were together, he asked Joe Nanez why he had done this and he simply stated "he didn't know."

The People then rested their case. In the absence of the jury, defendants moved for dismissal on the ground that no corpus delicti had been established sufficient to admit the extrajudicial statements. The motion was denied.

Defendant Joe Nanez then testified generally that that evening he went out there the first time to have a fight with "any" of the boys out there; that they had a grudge against them over the fight the week before; that as he was about to grab hold of the front door his aunt told him to "get out of there" so he and Gilbert left, had some drinks (beer) and went back; that he went in the front door but it was not locked; that he thought he knew where the "boys" slept and he went in the room and made a grab and by mistake grabbed hold of the girl, thinking he was grabbing one of the boys; that he heard her scream and that he got into the car and left. He admitted conversing with the officers and claimed they came in and told him Gilbert had confessed and they "showed me the paper where he had confessed and signed his name"; that he did not read the paper; that they threatened to "beat him up and everything"; that he told them the story related by the officers because he had been beaten up before and thought he would tell them that story

"to get rid of them"; that he could not remember which officer said he would beat them up. He denied entering the house for the purpose charged, and denied being drunk on that occasion.

Corralez then testified that he went with Joe to the home but remained in the car; that Joe went in to beat up the boys and that he was not going to get into it unless it was to "see a fair fight"; that there was nothing planned about taking Virginia away or doing anything to her; that he told a false story to the officers because they "acted like they were going to beat us up" when they placed us under arrest.

After argument the court fully instructed the jury. A verdict of guilty as charged resulted. A motion for new trial was denied.

The only points raised on this appeal are (1) That the evidence is not sufficient to support a judgment of conviction of the offense charged; (2) That the court erred in denying the motion for an instructed verdict; and (3) That defendants were convicted on their extrajudicial statements alone, citing such cases as *People* v. *Davis,* 47 Cal.App.2d 331 [117 P.2d 917]; *People* v. *Weston,* 32 Cal.App. 571 [163 P. 691]; *People* v. *Landman,* 103 Cal. 577 [37 P. 518].

There can be no question about defendant Joe Nanez entering the premises "in the night time" and without the consent of the Bertoldos. Gilbert knew he was so entering the premises and went to that home with him, in his car, for that purpose. The only question is whether, at the time Joe entered therein, he went in for the purpose indicated by him, that is, "to beat up on the boys" or whether he entered for the purpose of committing rape on Virginia.

If we believe the testimony of Mrs. Bertoldo, defendant Joe was in the house on the first occasion with the light on, and the door was propped open. He at that time must have seen the sleeping accommodations and the girl occupying the couch in the room. Assuming the truth of this testimony, which we must do in support of the verdict of the jury (*People* v. *Feld,* 149 Cal. 464 [86 P. 1100]), the testimony of defendant Joe Nanez, i. e., that he believed that "boys" were sleeping in that room and on that couch, must be cast aside as improbable. There must have been some more logical motive to account for defendant's presence in the girl's bedroom at 3 o'clock in the morning than the one indicated by him.

The jury had the right to infer from the facts related, independent of the defendants' extrajudicial statements, that the defendants had planned and intended to criminally attack

the little girl, either out of their own lustful desires or as a means of getting even with their relatives over some grudge they allegedly entertained.

There was sufficient evidence of the corpus delicti to admit the extrajudicial statements, which statements are entirely incompatible with the defendants' testimony as to what their actual intent was at the time. (*People* v. *Flores,* 34 Cal.App. 393 [167 P. 413] ; *People* v. *Vertrees,* 169 Cal. 404 [146 P. 890] ; *People* v. *Swaile,* 12 Cal.App. 192, 196 [107 P. 134].) The jury was the sole judge of any conflict in the evidence. (*People* v. *Sears,* 119 Cal. 267 [51 P. 325].) The evidence, in addition to the extrajudicial statements, sufficiently support the judgment and verdicts as rendered. The motion for an instructed verdict and the motion for a new trial were properly denied.

Judgment and order affirmed.

Barnard, P. J., and Marks, J., concurred.