# THE PEOPLE OF THE STATE OF CALIFORNIA *v.* THOMAS LEWIS.

VERDICT IN CRIMINAL CASE.—If a verdict finding the defendant guilty of murder is clearly not sustained by the evidence, the judgment will be reversed.

DRUNKENNESS NO EXCUSE FOR CRIME.—Insanity produced by intoxication does not destroy responsibility for the commission of a crime, when the party who committed the crime, when sane voluntarily made himself intoxicated.

EVIDENCE OF DRUNKENNESS AS EXCUSE FOR GUILT.—Drunkenness is no defense to the fact of guilt. Evidence of drunkenness can only be received and considered by the jury for the purpose of determining the degree of guilt, and for this purpose it should be received with great caution.

APPEAL from the District Court, Sixteenth Judicial District, Fresno County.

The Court instructed the jury as follows:

"It is a well settled principle of law that drunkenness is no excuse for the commission of a crime. * * * Insanity produced by intoxication does not destroy responsibility, when the party when sane and responsible made himself voluntarily intoxicated; and drunkenness forms no defense whatever to the fact of guilt—for when a crime is committed by a party while in a fit of intoxication, the law will not allow him to avail himself of the excuse of his own gross

vice and misconduct to shelter himself from the legal conse-
quences of such crime. Evidence of drunkenness can only
be considered by the jury for the purpose of determining
the degree of the crime, and for this purpose it must be
received with great caution."

The other facts are stated in the opinion of the Court.

*Coffroth & Spaulding,* and *C. E. Winchell,* for Appellant.

*Jo Hamilton, Attorney General,* for the People.

By the Court, CROCKETT, J.:

The defendant was indicted and tried for the crime of
murder in the killing of one Johnson. He was convicted of
murder in the second degree, and after the verdict moved
for a new trial, on the grounds, first, that the Court had mis-
directed the jury, and second, that the verdict was contrary
to the law and the evidence. The motion having been
denied, the defendant has appealed.

We discover no substantial error in the charge of the
Court to the jury. Taken as a whole, we think it fairly
states the law of the case, and that the jury could not have
been misled to the prejudice of the defendant. But we think
the verdict ought not to stand, and that the Court ought to
have granted a new trial. The proof shows that Johnson,
(the deceased,) Birge, McEvoy, White, and the defendant,
were all at the house of the latter, and were all drunk; that
Birge and the defendant had been engaged in fighting, the
former using a crowbar and the latter an axe, but no serious
damage was done to either, and they became apparently
reconciled; that White soon went into the house and fell
asleep; that McEvoy went off to catch a horse of the defend-
ant, which had broken away, but before leaving his pistol
had been taken from his belt by Johnson; that while he was
absent Johnson was shot in the abdomen, the weapon being

held so close to his person as to scorch his clothing; that in returning with the horse, McEvoy met the defendant, who mounted the horse and went off; that when McEvoy reached the house he found Johnson dead, with a hole in the front of the abdomen, apparently produced by a shot; that during all this time White was asleep in the house, and Birge was the only witness present at the alleged killing. The condition of this witness, and his ability to remember what occurred, may be inferred from the following extracts from his testimony:

"I was drinking a good deal at the time. When I am drinking a good deal, I am liable to not notice what occurs.

"I can't say that if Johnson had been making preparations to fight Louis that I would have seen them; he might have made such preparations and I not seen them.

"I can't say how long I had been at the house, because I don't recollect; I think I went there the day before; I don't recollect the day at all; I can't tell the time; I was not sober; I was considerably intoxicated; I had been drinking excessively; when I am intoxicated things occur that I don't recollect, and sometimes I receive erroneous impressions; I don't think I have a clear recollection of the facts of the case; what I have stated are the impressions on my mind; I cannot say that my recollections of what occurred are clear; they are not like what they would have been if I had been sober; I think I had been drinking two days or so."

This is the only witness who was present at the alleged killing; and it is chiefly on the vague "impressions" of this drunken witness that the defendant was convicted. The witness McEvoy was in no better condition. After stating that on the day of the alleged homicide he and the deceased had gone together from McArdle's grocery to the defendant's house, he says: "I had been drinking at several places along the trail before I got to McArdle's; I had a bottle with me that I drank out of; when I got to McArdle's I had been on a

spree two or three days; *I drank about a gallon and a half whilst I was at McArdle's;* when Johnson and I left McArdle's to go to Lewis' house, I had two bottles of liquor with me; when we got to Lewis' house we got off our horses, and Birge, Johnson, Lewis, White, and myself all drank out of Birge's two gallon demijohn; we all took a drink together." There was but one other witness for the prosecution who testified to any material fact. This witness (McCullough) passed the house shortly before the alleged homicide, and he says: "Birge and Lewis were drunk—were hardly able to keep on their feet." "I think Johnson had been drinking, but was not much the worse for it." This witness testifies that when he left, Johnson had a knife and pistol on his person—the former behind and the pistol in front, in the waistband of his pantaloons; that after he had gone three or four hundred yards from the house he heard a pistol shot; and on returning the next day found the dead body of Johnson lying about where he stood the day before; that the body had a hole in the breast, with a stain of blood, and the shirt was slightly scorched. He further testified that from experiments he had made he was satisfied that clothing could not be scorched by a pistol shot unless the weapon was held as near as two feet to the person. There was no *post mortem* examination of the body, and no physician was called to testify as to the wound or its probable effect. No witness, not even the inebriated Birge, testified to having seen the defendant fire the fatal shot, and there was no proof of any value that there had been any previous quarrel between the defendant and the deceased. A pistol was found on the body, but there was no proof whether it was loaded or not, and the testimony of the two drunken witnesses, Birge and McEvoy, leaves it entirely in doubt whether the deceased may not himself, either by design or accident, have fired the shot which caused his death. There is no proof whatever that the defendant was at any time near enough to the deceased to have scorched his clothing with a shot from his pistol.

On the whole, we should feel it to be a reproach to the

administration of justice, if we should allow a conviction for a grave offense to stand on such testimony as this.

Judgment reversed and cause remanded for a new trial, and remittitur directed to issue forthwith.

SPRAGUE, J., concurring specially:

I concur in the judgment of reversal, on the grounds stated in the opinion of my associates, and on the further ground that the evidence fails to establish a homicide. It is not shown by the evidence that the deceased had received a gun shot wound or any bodily injury or wound of any kind sufficient or likely to cause his death.

Mr. Justice SANDERSON expressed no opinion.