[No. 10,941.  Department Two. — May 27, 1884.]

| 65  | 275 |
|-----|-----|
| 122 | 239 |

## THE PEOPLE, RESPONDENT, v. T. J. BLAKE, APPELLANT.

CRIMINAL LAW—FORGERY—DRUNKENNESS AS A DEFENSE.—In a prosecution for forgery, evidence is admissible, on the question of intent, to show that in consequence of protracted intemperance defendant's mental faculties had been impaired to such an extent as to deprive him of the capacity to distinguish between right and wrong, and that he did not know what he was doing at the time of the commission of the act.

APPEAL from a judgment of the Superior Court of Stanislaus County, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*L. J. Maddux*, for Appellant.

*Attorney-General Marshall*, and *District-Attorney Simmons*, for Respondent.

Thornton, J — The defendant was accused by information of the forgery of a promissory note. The specific averments were that defendant "did feloniously, wilfully, and falsely make, utter, and pass to one John Robinson, a certain false, forged, and counterfeit note, as true and genuine," etc. The defendant was tried and convicted.

It is urged that the court on the trial committed errors prejudicial to defendant, to which our attention is called on this appeal.

The first point made is the ruling of the court on an offer made on behalf of defendant. An extract from the bill of exceptions will best show the point made: —

" L. B. Watthall duly sworn: —

"*Defendant* — I understand from the ruling of the court that I am not allowed to go back of this transaction.

" *Court* — I shall certainly not allow you to prove the general character and general habits prior to this act as to his drunkenness.

"*Defendant* — So that we may get ourselves on record properly, defendant offers to prove these facts, the court may deny the testimony, and I take my exceptions at this time. If the court is satisfied, then it is not necessary to call any more witnesses. The defendant proposes to prove this: That the defendant has for twenty years, or from fifteen to twenty years, been a strong drinker. That he is a man who when drunk acts unconsciously, and that from the excessive use of alcohol he is affected with chronic alcoholism, inebriate — in other words, dipsomania. And we propose to prove by witnesses —

" *Court* — In other words, you offer to prove insanity?

"*Defendant* — That he is insane from confirmed and excessive use of alcohol. We propose to prove that he is affected with dipsomania, and that he is arrived at that stage, whenever he is under the influence of liquor, that he is unable to tell what he is doing; that he is unable to distinguish right from wrong, and we will supplement this by proving that, at the time he did the act, he was under the influence of liquor."

The court refused to allow this testimony, to which defendant reserved an exception.

The offer might have been put with more clearness, but we think that by its fair interpretation it was an offer to show that the defendant was afflicted with dipsomania; that from pro-

tracted habits of intemperance his mind had been impaired; that when he was under the influence of liquor he was insane, did not know what he was doing, could not distinguish right from wrong, and that he was in that state when he committed the act of which he was accused.

Under these circumstances, should not the defendant have been allowed to introduce the testimony offered?

It has been so frequently and so generally held both in England and in the highest courts of this and other States of the Union, that drunkenness voluntarily brought on is no excuse for crime, that it may be considered as settled law. The propriety of such a law is well vindicated by Denio, J., in *People v. Rogers*, 18 N. Y. 9: "It will, moreover, occur to every mind that such a principle is absolutely necessary to the protection of life. In the forum of conscience, there is no doubt considerable difference between a murder deliberately planned and executed by a person of unclouded intellect, and the reckless taking of life by one infuriated by intoxication; but human laws are based upon considerations of policy, and look rather to the maintenance of personal security and social order, than to an accurate discrimination as to the moral qualities of individual conduct. But there is, in truth, no injustice in holding a person responsible for his acts committed in a state of voluntary intoxication. It is a duty which every one owes to his fellow-men, and to society, to say nothing of more solemn obligations, to preserve, so far as lies in his power, the inestimable gift of reason. If it is perverted or destroyed by fixed disease, though brought on by his own vices, the law holds him not accountable. But if, by a voluntary act, he temporarily casts off the restraints of reason and conscience, no wrong is done him if he is considered answerable for any injury which, in that state, he may do to others or to society." (*Kenny v. The People*, 31 N. Y. 330; *Jones v. Commonw.* 75 Pa. St. 403; *Swan v. State*, 4 Humph. 136; *Pirtle v. State*, 9 Humph. 663; *States v. Tatro*, 50 Vt. 483; *Hopt v. The People*, 104 U. S. 631; *Boswell's Case*, 20 Gratt. 860; *People v. Nichol*, 34 Cal. 215–217; *People v. Lewis*, 36 Cal. 531.)

But it has been held in this State and in other States, where the crime of murder is divided by statute into two degrees, the

higher degree requiring deliberation and premeditation, that evidence of intoxication is admissible upon the question as to the issue whether the homicide was committed with the above-named requisites. (*People* v. *Belencia,* 21 Cal. 544; *Same* v. *King,* 27 Cal. 507; *Same* v. *Nichol,* 34 Cal. 212; *Same* v. *Lewis,* 36 Cal. 531; *Same* v. *Williams,* 43 Cal. 344.)

There are also numerous cases in which it has been ruled that drunkenness is admissible on the question of intent. As where the intent is an element in the constitution of the offense, and without the intent the offense could not be committed. If an accused person was in such a condition of mind from intoxication as to be incapable of forming such intent, he could not have committed the crime, or incurred guilt. Being incapable of forming the criminal intent, he should be acquitted. (*State* v. *Bell,* 29 Iowa, 316; *Scott* v. *State,* 12 Tex. App. 31; *Wenz* v. *State,* 1 Tex. App. 36; *Roberts* v. *The People,* 19 Mich. 401; concurring opinion of Cooley, J., in *People* v. *Cummins,* 47 Mich. 334; *People* v. *Harris,* 29 Cal. 678; *Pigman* v. *State,* 14 Ohio, 555; *Wood* v. *State,* 34 Ark. 341.) The case last cited was an indictment for grand larceny in taking a pistol. The trial court was asked to instruct the jury that, if they believed from the evidence the defendant took the pistol, but that at the time he was so under the influence of intoxicating liquor that a felonious intent could not have been formed in his mind, they should find him not guilty. This instruction was refused. On appeal, this ruling was held error.

The above rulings in relation to drunkenness are in accord with the statute law of this State as expressed in section 22 of the Penal Code. Insanity produced by protracted over-indulgence in intoxicating liquors may be held to be an excuse for crime, and if such is the offer of the defendant the court below erred in its ruling.

But taking the offer to be what is clearly implied by its terms, that in consequence of protracted intemperance the mental faculties had been impaired to such an extent that intoxication deprived the defendant of the capacity to distinguish between right and wrong, and that he did not know what he was doing, we think on the authority of the cases above cited that the evidence was clearly admissible on the question of intent.

That intent is an element in the offense for which the defendant was tried, cannot, we think, be gainsaid. The statute makes an intent to defraud an element in such offense. (See Pen. Code, § 470.) By the provisions of the section cited, "every person who, with intent to defraud another, falsely makes . . . . any . . . . promissory note," " or utters, publishes, passes, or attempts to pass any false or forged promissory note . . . . with intent to defraud any person," is guilty of the crime of forgery.

Now the criminality of the defendant under this statute depends upon his mental condition at the time he committed the offense charged. If he was unable or incapable of forming such intent, he cannot be held guilty. The offer made was to prove that the defendant was in such a condition that he did not know what he was doing at the time he committed the offense with which he was charged. We think the court should have allowed the defendant to try to make good his offer by evidence, and that rejecting it was error.

The ability of the defendant to establish what he offered to prove may seem to be highly improbable, but we cannot admit that for this reason his offer should have been rejected. We cannot say that it is impossible for the defendant to sustain his offer by proof. Unless it is clearly impossible to make such proof it cannot, as a matter of law, be affirmed that the defendant should be debarred from making the trial.

We find no other error in the record, but for the error above pointed out the judgment is reversed, and the cause remanded for a new trial.

MYRICK, J., and SHARPSTEIN, J., concurred.