[Crim. No. 1388. In Bank.—August 12, 1907.]

THE PEOPLE Respondent, v. J. W. HOWER, Appellant.

CRIMINAL LAW—ASSAULT TO COMMIT MURDER—INTEMPERANCE AS EX-
CUSE FOR CRIME—INSTRUCTIONS.—On a trial for an assault with a
deadly weapon with intent to commit murder, an instruction to the
jury, given at the request of the defendant, directing them to return
a verdict of acquittal if they believed "that in consequence of long
intemperance the defendant has arrived at that stage whenever he is
under the influence of liquor that he is unable to tell what he is
doing, that he is unable to distinguish right from wrong, and that at
the time he committed the alleged assault he was under the influ-
ence of liquor," is erroneous and too favorable to the defendant
in ignoring all distinction between voluntary and involuntary intoxi-
cation; and the fact that there is a conflict between such instruction
and the other instructions given by the court of its own motion,
which correctly state the law on the subject of intemperance as an
excuse for crime, is without prejudice to the defendant.

ID.—VOLUNTARY INTOXICATION—INSANITY AS RESULT OF ALCOHOLISM.—
No act committed by a person while in a state of voluntary intoxica-
tion is less criminal for this reason, save that when the actual
existence of any particular purpose, motive, or intent is a necessary
element to constitute any specific species or degree of crime, the
circumstance of voluntary intoxication may be considered by the
jury in determining the fact whether or not that particular purpose,
motive, or intent was present. But a sane person who voluntarily
becomes intoxicated is not relieved from responsibility because of
any mental derangement, *mania a potu,* or insanity produced by
and consequent upon his own voluntary act. Upon the other hand,
if one by reason of long-continued indulgence in intoxicants has
reached that stage of chronic alcoholism where the brain is perma-
nently diseased, and he is rendered incapable of distinguishing right
from wrong, and where permanent general insanity has resulted, he is
no more legally responsible for his acts than would be the man con-
genitally insane, or insane from violent injury to the brain.

ID.—ASSAULT WITH DEADLY WEAPON WITH INTENT TO MURDER—LESSER
CRIME INCLUDED IN INFORMATION—INSTRUCTIONS.—The offense of an
assault with a deadly weapon with intent to commit murder embraces
the lesser offenses of assault with a deadly weapon and simple assault,
to constitute either of which the specific intent which is an essential
element of the higher crime is not necessary; and on a trial under
an information charging such higher offense, in which the court cor-
rectly instructed the jury as to the various kinds or grades of offense
included in the information, a further instruction on the subject of
intoxication, to the effect that "evidence of drunkenness can only be
considered by the jury for the purpose of determining the degree

of crime," must be construed as authorizing them to take the fact of intoxication into consideration in determining as to which of the various kinds or grades of offense included in the information the defendant was guilty. So construed, the instruction was not prejudicial.

ID.—CROSS-EXAMINATION—ERROR IN DENYING SUBSEQUENTLY CURED.— Any error there may have been in refusing the defendant permission to cross-examine, as to his condition for sobriety, eye-witnesses of the assault called by the prosecution in opening its case is cured if one of such witnesses is subsequently called by the defendant and testified upon the subject favorably to him, and the others were called in rebuttal by the people and testified on this subject, and the defendant was then given full opportunity, which he exercised, to cross-examine them thereon.

ID.—EVIDENCE OUT OF COURT—AFFIDAVIT ON INFORMATION AND BELIEF. —An affidavit to the effect that the jury received evidence out of court, entirely based upon the "information and belief" of the defendant's attorney, is ineffectual for any purpose in support of a motion for new trial.

ID.—EXHIBITS LEFT IN COURTROOM—INSPECTION BY JURY.—The mere fact that the garments worn by the person assaulted, which were received in evidence on the trial and then examined and inspected by the jury, were on the floor of the courtroom and in the sight of the jury while they were deliberating in that room on their verdict, does not compel the conclusion that such garments were examined by the jury during their deliberation. Even if such examination had been made, it would have been without prejudice to the defendant.

ID.—INSTRUCTION—WITNESS FALSE IN PART OF TESTIMONY.—An instruction to the jury, to the effect that "a witness who testifies falsely as to one part in giving his testimony is to be distrusted in other parts of his testimony, and "if you find that a witness has deliberately testified falsely in one part of his testimony in this case, you have the right to reject the whole of the testimony of that witness which is not shown by other evidence in the case to be true," is not ground for reversal. Such an instruction contains mere commonplace matters that the jurors would be apt to know about and act upon in the absence of instructions.

APPEAL from a judgment of the Superior Court of Mariposa County and from an order refusing a new trial. J. J. Trabucco, Judge.

The instruction referred to in paragraph 5 of the opinion was in the following language: "A witness who testifies falsely as to one fact in giving his testimony is to be distrusted in other parts of his testimony. If you find that a witness has deliberately testified falsely in one part of his testimony

in this case, you have the right to reject the whole of the testimony of that witness which is not shown by other evidence in the case to be true. I do not intimate to you that any witness in this case has testified falsely or that any witness has been impeached in this case. These are matters exclusively within your province as jurors and not to be determined by the court." The further facts are stated in the opinion of the court.

John A. Wall, for Appellant.

U. S. Webb, Attorney-General, C. N. Post, Assistant Attorney-General, and J. Charles Jones, for Respondent.

ANGELLOTTI, J.—The defendant was found guilty of the offense of assault with intent to commit murder, upon an information charging him with the offense of an assault with a deadly weapon with intent to commit murder, and was adjudged to suffer imprisonment in the state prison therefor. He appealed from the judgment and from an order denying his motion for a new trial, and the cause was ordered transferred to this court for hearing and decision, after decision in the district court of appeal for the third district.

1. Error is alleged in the matter of certain instructions given upon the subject of drunkenness. There was some evidence tending to show that the defendant was to some extent under the influence of intoxicating liquor at the time of the commission of the offense. The defendant testified that during the last four years "the drink habit had held him absolutely, that when under the influence of liquor he did not know right from wrong, that when the craving and desire for liquor came over him, he could not resist it, and that on the day in question he commenced drinking, and remembered nothing about any trouble with the prosecuting witness."

Upon defendant's request, the court gave to the jury the following instruction: "If you believe that in consequence of long intemperance that defendant has arrived at that stage, whenever he is under the influence of liquor, that he is unable to tell what he is doing, that he is unable to distinguish right from wrong and that at the time defendant committed the alleged assault upon Frank Judeas, he was under the influ-

ence of liquor, then I charge you that it is your duty to acquit.''

At the same time, the court, on its own motion, instructed the jury as follows:—

1st. ''No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition, but, whenever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive or intent with which he committed the act.''

2d. ''It is a well-settled rule that drunkenness is no excuse for the commission of a crime. Insanity produced by intoxication does not destroy responsibility when the party, when sane and responsible, made himself voluntarily intoxicated; and drunkenness forms no defense whatever to the fact of guilt, for when a crime is committed by a party while in a fit of intoxication, the law will not allow him to avail himself of his own gross vice and misconduct to shelter himself from the legal consequences of such crime. Evidence can only be considered by the jury for the purpose of determining the degree of crime, and for that purpose it must be received with great caution.''

It is not claimed by appellant that these instructions, so given by the court on its own motion, did not correctly state the law as to voluntary intoxication. The first was in the words of section 22 of the Penal Code, and the second has been held not to be erroneous in a long line of cases commencing with *People* v. *Lewis,* 36 Cal. 531. The claim of learned counsel for defendant is that these instructions are in conflict with the instruction given at his request, hereinbefore set forth, which, it is further claimed, was a proper instruction under the circumstances of this case.

That there is such a conflict is apparent. It does not, however, follow that defendant can complain thereof. The instruction given at defendant's request was clearly erroneous. By it the jury were informed simply that if the defendant, while under the influence of liquor, was unable to tell what he was doing and unable to distinguish between right and wrong, and if he was under the influence of liquor

CLI Cal.—41

at the time of the alleged assault, they must acquit. It disregards entirely the question as to whether the intoxication was voluntary, requiring an acquittal under the circumstances specified, whether the intoxication was voluntary or not. It was therefore in plain conflict with the provisions of section 22 of the Penal Code, set forth in the first of the instructions given on this subject by the court on its own motion, and with the decisions of this court, and, so far as we have discovered, with the decisions of courts generally upon this subject. In *People* v. *Blake,* 65 Cal. 275, [4 Pac. 1], relied on by defendant in support of the instruction, the court, after declaring that it has been so frequently and so generally held both in England and in the highest courts of this and other states that drunkenness voluntarily brought on is no excuse for crime, it may be considered as settled law, said, quoting approvingly from *People* v. *Rogers,* 18 N. Y. 9, [72 Am. Dec. 484] : "It will moreover occur to every mind that such a principle is absolutely necessary to the protection of life. . . . But there is, in truth, no injustice in holding a person responsible for his acts committed in a state of voluntary intoxication. It is a duty which every one owes to his fellow-men, and to society, to say nothing of more solemn obligations, to preserve, so far as lies in his power, the inestimable gift of reason. If it is perverted or destroyed by fixed disease, though brought on by his own vices, the law holds him not accountable, but if, by a voluntary act, he temporarily casts off the restraints of reason and conscience, no wrong is done him if he is considered answerable for any injury which, in that state, he may do to others or to society." In *People* v. *Travers,* 88 Cal. 233, 239, [26 Pac. 88], it was said by the court in bank, speaking through Mr. Justice McFarland: "As to the instructions asked by appellant on the subject of *delirium tremens,* etc., it is sufficient to say that settled insanity produced by a long-continued intoxication affects responsibility in the same way as insanity produced by any other cause. But it must be 'settled insanity,' and not merely a temporary mental condition produced by recent use of intoxicating liquor." The law upon this subject was so clearly and concisely stated by this court, speaking through Mr. Justice Henshaw, in *People* v. *Fellows,* 122 Cal. 233, 239, [54 Pac. 830], that we quote therefrom at length: "No act committed by a person while

in a state of voluntary intoxication is less criminal for this reason, saving that when the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any specific species or degree of crime, the circumstance of voluntary intoxication may be considered by the jury in determining the fact whether or not that particular purpose, motive, or intent was present. (Pen. Code, sec. 22.) *But a sane person who voluntarily becomes intoxicated is not relieved from responsibility because of any mental derangement, mania a potu, or insanity produced by and consequent upon his own voluntary act.* Such is the import of the instruction in *People* v. *Lewis*, 36 Cal. 531, and it is that form of insanity, if insanity it may be called (for we do not think the word happily chosen), to which the instruction has reference. *A sane man, therefore, who voluntarily drinks and becomes intoxicated is not excused because the result is to cloud his judgment, unbalance his reason, impair his perceptions, derange his normal faculties, and lead him to the commission of an act which in his sober senses he would have avoided.* Upon the other hand, if one, by reason of long-continued indulgence in intoxicants, has reached that stage of chronic alcoholism where the brain is permanently diseased, where the victim is rendered incapable of distinguishing right from wrong, and where permanent general insanity has resulted, then, and in such case, he is no more legally responsible for his acts than would be the man congenitally insane, or insane from violent injury to the brain.'' (The italics are ours.) (See, also, note to *Knight* v. *State,* 76 Am. St. Rep. 91.) It may possibly be that, in view of the evidence of the defendant, he would have been warranted in requesting an instruction embodying the doctrine to the effect that where permanent general insanity results from long-continued indulgence in intoxicating liquors, it has the same effect as to the responsibility of a person as permanent insanity resulting from any other cause, although the foundation in the evidence for such an instruction is very slight. But no such instruction was requested, the instruction in fact requested and given being simply a statement absolutely at variance with section 22 of the Penal Code and the well-settled doctrine stated in the decisions above cited. The evidence was such as to warrant a conclusion on the part of the jury that the defendant, when

sane and responsible, voluntarily made himself intoxicated, and therefore it must be held under the decisions that the instructions given by the court on its own motion were cor-- rect. The only conflict in the instructions given was that caused by the giving of the erroneous instruction at the request of the defendant, which stated the rule more favorably to him than it should have done. Under such circumstances, the defendant has no good ground of complaint. (*People* v. *Suesser,* 142 Cal. 354, 364, [75 Pac. 1093]; *Williams* v. *Southern Pacific Co.,* 110 Cal. 457, 462, [42 Pac. 974]; *Dennison* v. *Chapman,* 105 Cal. 447, 458, [39 Pac. 61].)

*People* v. *Blake,* 65 Cal. 275, [4 Pac. 1], relied on by defendant, in support of the instruction, is not opposed to the views we have stated. The question there was as to the admissibility of evidence in a case where an intent to defraud was a necessary element of the offense charged, and evidence tending to show that the defendant was unable or incapable of forming such intent was held admissible. This ruling was in full accord with section 22 of the Penal Code.

The learned court of appeal held that the second instruction given by the court on its own motion was prejudicially erroneous in stating that "evidence of drunkenness can only be considered by the jury for the purpose of determining the degree of crime," the offense charged, assault with intent to commit murder, not being divided into degrees. But embraced in the charge made by the information were the lesser offenses of assault with a deadly weapon and simple assault, to constitute either of which the specific intent which was an essential element of the higher charge was not necessary. The court correctly instructed the jury as to the various kinds or grades of offense included in the information. We are of the opinion that under these circumstances the last-quoted portion of the instruction given could only be understood by the jury as authorizing them to take the fact of intoxication into consideration in determining as to which of the various kinds or grades of offense included in the information the defendant was guilty. So construed, the instruction was certainly not prejudicial. *People* v. *Phelan,* 93 Cal. 111, [28 Pac. 855], in which such an instruction was held erroneous, is not in point. The offense there charged was burglary, which is divided into two degrees, the only distinguishing fea-

ture between such degrees being as to the time when the crime is committed, burglary in the night-time being of the first degree and burglary in the daytime being of the second degree. The specific intent essential to that offense is the intent at the time of the entry to commit larceny or some other felony. The defendant introduced evidence to show that he was intoxicated at the time of entry, for the purpose of showing the absence of an intent to commit any felony, in which event he was entitled to an acquittal. Under these circumstances, the court instructed the jury that such evidence could only be considered for the purpose of determining "the degree of the crime." Manifestly, this could be read only as referring to the degrees into which the offense was divided by law, and as to which the court had doubtless instructed the jury. So read, it was undoubtedly erroneous. (See *People* v. *Vincent*, 95 Cal. 425, 429, [30 Pac. 581].)

2. Four eye-witnesses of the assault were called by the people and examined as to the affair, but on their direct examination they were asked no question and gave no testimony as to defendant's condition so far as sobriety was concerned. On cross-examination each was asked as to defendant's condition for sobriety on that day, and an objection that the same was not proper cross-examination was sustained, the court stating that it would accord the privilege to defendant of recalling the witnesses as his own. One of these witnesses was called by defendant, and testified upon the subject favorably to him. The other three were called in rebuttal by the people, and testified on this subject, and the defendant was then given full opportunity to cross-examine them thereon. This right he then exercised. In view of these facts, it is unnecessary to consider whether the court erred in the rulings complained of. If it be assumed that it did err, manifestly the error was without prejudice.

3. It is claimed that the jury received evidence out of court other than that resulting from a view of the premises. This claim is based upon an affidavit made by counsel for defendant showing that the coat and shirt worn by the prosecuting witness at the time of the assault, which, it is said, were in a "most horrible, revolting and disgusting" condition, by reason of the rents and cuts therein made by defendant's knife, and the "dried, matted and putrid blood thereon"

which had come from the wounds made by defendant, were, after being received in evidence and examined and inspected by the jury, left on the floor of the courtroom during the deliberations of the jury, the courtroom, in accord with the custom in said court, being used as the jury-room. There is nothing but the bare "information and belief" statement of defendant's attorney to show that any examination of the coat or shirt was made by any juror after the submission of the case, and this, of course, was ineffectual for any purpose. (*People* v. *Feld,* 149 Cal. 464, [86 Pac. 1100].) The mere fact that they were on the floor in the courtroom, and in sight of the jury, does not compel the conclusion that they were so examined. Moreover, the affidavits on motion for a new trial were such as to support a conclusion that these articles had been fully inspected and examined by the jury at the time they were received in evidence, and we are unable to see how, under the circumstances of this case, the defendant could be held to have been prejudiced, even had it appeared that the jurors, or some of them, had again inspected the garments.

4. The instruction as to distrust of a witness who testifies falsely as to one fact in giving his testimony, and the right of the jury to reject the whole of the testimony of a witness who is found by them to have deliberately testified falsely in one part of his testimony, noted by the learned court of appeal in its opinion, was not such as to call for a reversal. (See *People* v. *Dobbins,* 138 Cal. 694, [72 Pac. 339].) It is also to be noted that this instruction, which is word for word the instruction considered in the case last cited, belongs to that class of instructions which contain only mere commonplace matters that the jurors would be apt to know about and act upon in the absence of instructions. It is well settled that the giving of instructions of that class will not be held to be a proper ground for reversal. (*People* v. *Tibbs,* 143 Cal. 100, 103, [76 Pac. 904]; *People* v. *Wardrip,* 141 Cal. 229, [74 Pac. 744]; *People* v. *Farrington,* 140 Cal. 656, [74 Pac. 288]; *People* v. *Wong Bin,* 139 Cal. 65, [72 Pac. 505].)

This disposes of all the points made for a reversal.

The judgment and order are affirmed.

Shaw, J., Sloss, J., Henshaw, J., Lorigan, J., and Beatty, C. J., concurred.

McFARLAND, J., concurring.—I concur in the judgment of affirmance, because I think that the error committed by the trial court which is hereinafter noticed probably had no prejudicial effect upon the minds of the jury. But, in my opinion, the district appellate court was right in holding that the trial court committed an error in instructing the jury that "evidence of drunkenness can only be considered by the jury for the purpose of determining the *degree of crime.*" This is in direct conflict with section 22 of the Penal Code, and takes away from that section its most important feature. The section is as follows: "No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. But whenever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any particular *species* or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive, or intent with which he committed the act." This language is not confined to a "degree" of a crime, but embraces any *"species,"* or kind of crime, whether divided into degrees or not; it applies to every crime of which the existence of a particular intent or purpose is a necessary element. It is true that this court in two or three cases used the expression that drunkenness could be considered only in determining the degree of a crime, but it was used only in murder cases where the degrees of the crime depended on a particular intent or purpose; and as it was said in *People* v. *Vincent,* 95 Cal. 425, [30 Pac. 581], "the degrees of murder are based upon the 'intent'—the deliberation or premeditation—with which the act is done; and therefore it is not improper, in trials for unlawful homicide, to instruct the jury that they can consider intoxication only for the purpose of determining the degree of the crime, because that is telling them in substance that they may consider it in determining 'the purpose, motive, and intent' with which the act was committed." But that the court did not intend to declare the invariable rule that drunkenness can be considered only to determine the degree of crime clearly appears in the case of the *People* v. *Phelan,* 93 Cal. 111, [28 Pac. 855]. In that case the defendant was charged with burglary, which crime consists in entering a building with intent

to commit larceny or some felony. The defendant introduced evidence showing that he was greatly intoxicated at the time of the alleged commission of the crime, and did not have, and could not have had, any intent to commit a felony in the building; but the court instructed the jury—as the jury were instructed in the case at bar—that "evidence of drunkenness can only be considered by the jury for the purpose of determining the degree of the crime." Of course, this instruction in the Phelan case was absurd, because the degrees of burglary are founded on the time of the commission of the crime, whether in the daytime or night-time, and have no reference to the intent of the party charged; but the case was reversed for the giving of the instruction, because it took away from the jury the right to consider the drunkenness of the defendant in determining the intent or purpose with which he entered the building. The principle would have been the same if burglary had not been divided into degrees at all. The court say: "As given, the instruction withdrew from the consideration of the jury evidence which the code says a jury may consider in determining the intent with which an act is committed; . . . the instruction that the jury could not consider that evidence for any other purpose than that of determining the degree of the crime is clearly erroneous, and for that error the judgment appealed from must be reversed." And in *People* v. *Vincent,* 95 Cal. 425, [30 Pac. 581], the court, commenting upon the Phelan case, said: "Burglary consists in entering a house . . . 'with intent to commit grand or petit larceny, or any felony'; and it is apparent to the dullest apprehension that a drunken man might unlawfully enter a house without any intent whatever to commit larceny or felony. And it is equally apparent that a jury, in determining with what intent he entered, might well consider the fact that he was intoxicated; but the 'degree' of the crime would have nothing to do with it. The court, in delivering the decision in *People* v. *Phelan,* 93 Cal. 111, [28 Pac. 855], did not consider it necessary to state that they were not dealing with a murder trial." We think, therefore, that in the case at bar the court clearly erred in using the language which we have considered; and any instruction in that abstract form should never be given. Whenever an essential element of a crime is the particular intent or purpose with which the

act is done, drunkenness may be considered by a jury in determining whether such intent or purpose actuated the defendant; and this is so whether or not there are any degrees of the crime with which the defendant is charged.

Rehearing denied.