[Crim. No. 1835.    In Bank.—September 18, 1914.]

THE PEOPLE, Respondent, v. SAMUEL J. RABER, Appellant.

CRIMINAL LAW—MURDER COMMITTED IN PERPETRATION OF CONSPIRACY TO ROB—ALL CONSPIRATORS ARE GUILTY—ABSENCE OF INTENT TO MURDER.—Murder committed by one of several conspirators during the perpetration of a conspiracy to commit robbery is murder of the first degree, for which all of the conspirators are equally responsible. It is immaterial that the conspirators may not have intended to bring about their victim's death.

ID.—MISCONDUCT OF DISTRICT ATTORNEY—STATEMENT OF CONFESSION OF CO-CONSPIRATORS—ADMONITION TO JURY TO DISREGARD—ADMISSION OF FACTS BY DEFENDANT.—In a prosecution of one of the conspirators for such murder, a statement made by the district attor-

ney in his opening to the jury, narrating certain incriminating facts claimed to have been confessed by a co-conspirator, which merely went to indicate the formation of a plan of the robbery, will not be deemed prejudicial misconduct, if that officer, immediately upon objection being made, withdrew his statement regarding the confession, admitted that it could not be used and should not be considered against the defendant, and the defendant, when a witness in his own behalf, admitted the substantial truth of the facts so stated to have been confessed.

ID.—STATEMENT OF CO-CONSPIRATOR TO THIRD PERSON—HEARSAY EVIDENCE.—On such trial, the testimony of a witness, to the effect that a co-conspirator had stated to him that he and not the defendant had done the killing, is incompetent as hearsay.

ID. — INSTRUCTIONS — CIRCUMSTANTIAL EVIDENCE — DEGREE OF PROOF WARRANTING CONVICTION — ADMISSION OF KILLING — REASONABLE DOUBT.—Notwithstanding the prosecution on the trial produced no eye-witness to the homicide, the refusal of the court to charge the jury upon the proposition that a conviction in a criminal case is not warranted unless the proof made is inconsistent with any theory or hypothesis other than that of the guilt of the accused, will be deemed without prejudice, if the unlawful killing of the deceased, and the defendant's participation in the killing, were affirmatively shown by the defendant's own testimony, and the court gave very full instructions defining reasonable doubt and emphasizing the obligation of the prosecution to establish, beyond such doubt, every material allegation of the information.

ID.—ORAL ADMISSIONS OF DEFENDANT TO BE VIEWED WITH CAUTION.—A judgment of conviction will not be reversed either for the giving or the refusing of an instruction to the effect that "evidence of the oral admissions of the defendant ought to be viewed with caution."

APPEAL from a judgment of the Superior Court of Sacramento County and from an order refusing a new trial. W. M. Conley, Judge presiding.

The facts are stated in the opinion of the court.

J. M. Inman, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

SLOSS, J.—Samuel J. Raber was found guilty of the murder of Cherry de St. Maurice, and sentence of death was pronounced. He appeals from the judgment and from an order denying his motion for a new trial.

The proof of appellant's guilt was complete and convincing, and no question of the sufficiency of the evidence is made. It was shown that Cherry de St. Maurice, the deceased, was the keeper of a house of ill fame, known as the Cherry Club, in Sacramento. One of the inmates was a woman named Cleo Sterling. The information on which Raber was tried charged him, jointly with Cleo Sterling and one Drumgoole, with the murder. It was shown that the three had united upon a plan to rob the deceased of her jewelry and money. Drumgoole and Raber entered the Cherry Club with the connivance of Cleo Sterling, were admitted to her room, and after there disguising themselves by blackening their faces and otherwise, gained admission to the room occupied by Cherry de St. Maurice. The woman was seized and overpowered, and while one of her assailants held her, the other searched the room and found a quantity of jewelry. In the course of the struggle, Cherry de St. Maurice was choked to death. Raber and Drumgoole, after removing their disguises, left the house with their booty. They made their way to San Diego, where they were apprehended in the effort to dispose of some of the stolen jewelry. After their return to Sacramento, Raber made a confession which embraced the foregoing facts relating to the robbery and killing. His testimony in his own behalf was to the same effect. He claimed, in his confession and at the trial, that he had had no intention of killing the woman, and that the violence which caused her death had been inflicted by Drumgoole while he, Raber, was searching for valuables. Whether the actual killing was done by one or the other is entirely immaterial. Each of the parties to the criminal enterprise was responsible for all acts done by the other in the prosecution of that enterprise. Nor is it of the slightest consequence that the conspirators may not have intended to bring about their victim's death. The killing, having occurred in the perpetration of robbery, was murder of the first degree. (Pen. Code, sec. 189.)

The appellant claims that his rights were prejudicially affected by a declaration of the district attorney. That officer, while making a somewhat elaborate statement of the facts to be proven, said that, after the return of the prisoners to Sacramento, Drumgoole had "told the whole story. He (Drumgoole) commenced with his leaving Reno with Raber; told of coming to Sacramento; told of a plan engineered by Raber

and suggested by Cleo to rob. . . . '' At this point defendant's counsel interposed, whereupon the district attorney said: "Excuse me; I will take that back. I have no right to state the confession of Drumgoole.'' He went on to say to the jury that any confession of Drumgoole was not testimony against the defendant, and directed or requested the jury to "pay no attention to anything he had stated that Drumgoole had said." The mere statement of what occurred should be sufficient to answer the claim of prejudicial misconduct. The prosecuting officer, immediately upon objection being made, withdrew his statement regarding Drumgoole's confession, and frankly admitted to the jury that such confession could not be used against Raber, and should not be considered against him. Such prompt retraction would, except under extreme and unusual circumstances, remove the possibility of prejudice. Here the conditions were not such as to make the impropriety of the statement irremediable. The reference to Drumgoole's confession had gone no further than to indicate the formation of a plan of robbery. That such plan had been made and carried out, and that Raber was an active participant in it, was admitted by the appellant himself. If it be said that the suggestion that such plan was "engineered" by Raber might have had a harmful effect, the simple answer is that Raber's confession and testimony made it perfectly clear that this description of his part in the enterprise was in substantial accord with the facts as related by himself. Even in the absence of the provisions of section 4½ of article VI of the constitution, we should unhesitatingly hold that the language complained of did not constitute misconduct warranting a reversal.

After their arrest, Raber and Drumgoole were confined in the county jail at Sacramento. The appellant offered to prove, by the testimony of two fellow-prisoners, that Drumgoole had stated to them that he, and not Raber, had killed Cherry de St. Maurice. The objection to this testimony was properly sustained. The alleged statement of Drumgoole was clearly incompetent as hearsay.

The remaining points raised have to do with the refusal to give certain instructions requested by the appellant. Two of these were designed to present the proposition that a conviction in a criminal case is not warranted unless the proof made is inconsistent with any theory or hypothesis other than that

of guilt on the part of the accused. Instructions embodying this principle have frequently been held to be proper in cases where the proof was circumstantial merely, and in such a case an instruction declaring the rule stated should, if requested, be given. (*People* v. *Dick*, 32 Cal. 213.) But here, while the prosecution produced no eye-witness to the homicide, the unlawful killing of the deceased, and the appellant's participation in that killing, were admitted, or rather, affirmatively shown, by the appellant's own testimony. In this state of the case, it is difficult to see how there could be any choice between two theories—one pointing to appellant's guilt and the other to his innocence. The appropriateness of the requested instructions to the particular case is, at least, questionable. At any rate, under the facts shown, every substantial right of the appellant was protected by the action of the court in giving, as it did, very full instructions defining reasonable doubt and emphasizing the obligation of the prosecution to establish, beyond such doubt, every material allegation of the information.

A requested instruction, dealing with the presumption of innocence, was refused, but the subject was sufficiently covered by the instructions given.

The appellant requested the court to charge that "evidence of the oral admissions of the defendant ought to be viewed with caution." The Code of Civil Procedure (sec. 2061) provides that the jury is to be so instructed "on all proper occasions." It is, however, settled by the decisions of this court, that such instruction, if not in violation of the constitutional injunction against charging juries on matters of fact, is one that may properly be refused as a "mere commonplace." In short, a judgment will not be reversed either for the giving or the refusing of this instruction. (*People* v. *Newcomer*, 118 Cal. 263, [50 Pac. 405]; *People* v. *Wardrip*, 141 Cal. 229, [74 Pac. 744]; *People* v. *Tibbs*, 143 Cal. 100, [76 Pac. 904]; *People* v. *Hower*, 151 Cal. 638, [91 Pac. 507].)

The appellant makes no other points, and none presents itself to us upon a careful reading of the record. The appellant was fairly tried and justly found guilty as charged.

The judgment and the order denying a new trial are affirmed.

Shaw, J., Angellotti, J., Melvin, J., Henshaw, J., and Sullivan, C. J., concurred.