[Crim. No. 523. Second Appellate District.—January 27, 1917.]

THE PEOPLE, Respondent, v. HILARIO HERRERA, Appellant.

CRIMINAL LAW—INSTRUCTION—WITNESS FALSE IN PART OF TESTIMONY. In a criminal action the right of the defendant to a fair and impartial trial is not prejudiced by the modification of an instruction offered by him declaring that a witness false in a material part of his testimony "is to be" distrusted in others, and that where the jury was satisfied that a witness had so sworn falsely they "must" treat all of his or her testimony with suspicion, so as to make the instruction read that a witness willfully false in a material part of his or her testimony "may be" distrusted in others, and that the jury "might" treat all of his or her testimony with distrust and suspicion under such circumstances. Such instruction relates to commonplace matters which the jury would be apt to know and act upon in the absence of instruction.

ID.—FAILURE TO FLEE FROM SCENE OF CRIME—CIRCUMSTANCE OF INNOCENCE.—In a prosecution for murder the refusal to instruct the jury that the fact that the defendant did not flee from the scene of the shooting was of itself a circumstance in his favor, is not error, as it

will be assumed that the jury considered the matter, as one of the commonplace things of which the mind of an ordinary man will take cognizance without instruction.

ID.—TAKING OF EXHIBITS TO JURY-ROOM—LACK OF PREJUDICE.—In such a prosecution, the rights of the defendant are not prejudiced by the fact that the jury were permitted to take with them into the jury-room, while deliberating on a verdict, the door through which the bullets were fired and certain blackboard illustrations, all of which were introduced in evidence, in the absence of any showing made that such exhibits were used in their deliberations, or that they received any improper impressions therefrom.

ID.—EVIDENCE—INCRIMINATORY STATEMENTS.—In such a prosecution evidence of incriminatory statements made by the defendant to a police officer are admissible, where it is shown by such officer that no inducements were held out or improper influence exerted by himself or any other person to his knowledge, notwithstanding the accused had been in charge of other officers and in jail prior to the making of the statements.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. G. W. Nicol, Judge presiding.

The facts are stated in the opinion of the court.

S. S. Hahn, for Appellant.

U. S. Webb, Attorney-General, and Robert M. Clarke, Deputy Attorney-General, for Respondent.

JAMES, J.—Defendant was charged with the crime of murder, it being alleged in the information of the district attorney that he did, on the tenth day of June, 1916, in the county of Los Angeles, feloniously and with malice, kill one Soledad Juarez. By the verdict of the jury defendant was found guilty of the crime charged, in the second degree thereof, and judgment followed accordingly. The appeal is taken from the judgment of imprisonment and from an order denying a motion for a new trial.

The deceased was the wife of Filomeno Juarez, and at the time she received the fatal wound she resided with her husband in a two-room house in the city of Los Angeles. Juarez, the husband, was a laborer and was acquainted with the defendant, the two men having theretofore worked as section-hands on a railroad near Los Angeles. On the tenth day of

June, 1916, Juarez met defendant at about 3 o'clock in the afternoon on the street. Defendant informed Juarez that he was going to San Pedro to work, and urged Juarez to accompany him. Juarez's reply to the invitation was that he could not decide the matter without consulting with his wife. Juarez returned to his home later in the evening, where he resided with his wife and some small children. According to testimony given by the husband, he and his wife retired to bed in the front room of the house at about 9 o'clock; the screen door at the front being closed and latched and the inner wooden door being closed. Shortly after they had retired there was a knock at the front door, and upon Juarez opening it he found the defendant Herrera there. Juarez testified that Herrera invited him to accompany him to a neighboring wine cellar for a drink, which invitation was declined, and Herrera was also informed that Juarez would not go to San Pedro to work. Thereupon the door was closed by Juarez, who, it may be gathered from his testimony, then returned to his bed. Almost immediately, so Juarez testifies, some shots were fired by Herrera, and the wife, who had gone to the door to hold it shut, received one of the bullets through her body. This wound caused her death, which occurred the following day. The testimony was that three shots were fired through the door. Upon the woman being shot, she cried out and called to a neighbor to send for the police, and a telephone message conveyed to a branch police station the alarm. Two policemen in an automobile hurried to the scene, and one of these officers testified that he found Herrera at the door; that when the officers approached, the defendant dropped a gun and placed his foot upon it; that they arrested the defendant and upon examining the gun found it to be fully loaded. The wounded woman was taken to a hospital and defendant transported to the jail. Other witnesses who were aroused by the alarm testified that they observed the defendant at the door of the Juarez house immediately after the shots were fired, and that he was trying to get into the room where Juarez and his wife were. It was given in evidence that after his arrest the defendant made a statement to the police officers admitting the firing of the shots, and stating that he shot because Juarez would not go with him to San Pedro. The substance of the defendant's testimony was that, while he was at the house of

Juarez on the night in question, Juarez quarreled with his
wife, and the gun, which had been handed to the defendant,
was discharged when Juarez grappled with the defendant, and
that the gun went off by accident.   Contrary to the assertion
made on behalf of appellant that the evidence upon which the
conviction was had was meager, and that upon the facts a
"close case" was presented, we think there was abundant evi-
dence to warrant the jury in determining the guilt of the de-
fendant.   Several alleged errors are relied upon as consti-
tuting grounds for reversal.

An instruction was offered on the part of the defendant,
declaring that a witness false in a material part of his testi-
mony "is to be" distrusted in others, and that where the jury
was satisfied that a witness had so sworn falsely they "must"
treat all of his or her testimony with distrust and suspicion.
The court modified the instruction to make it read that a wit-
ness willfully false in a material part of his or her testimony
"may be" distrusted in others, and that the jury "might"
treat all of his or her testimony with distrust and suspicion
under such circumstances.   The particular complaint is that
the instruction as offered contained a correct statement of the
provisions of section 2061 of the Code of Civil Procedure,
which declares: "3. That a witness false in one part of his
testimony is to be distrusted in others."   It was, indeed, held
in the case of *White* v. *Disher,* 67 Cal. 402, [7 Pac. 826], that
it was prejudicial error for a court to instruct the jury that
a witness false in one part of his testimony "may be" dis-
trusted in others; it being argued that the code provision in
effect declared that such a witness "must be" distrusted.
The law on this question has been subjected to some modifica-
tion since the writing of that decision.   In *People* v. *Hower,*
151 Cal. 638, [91 Pac. 507], it is declared that instructions of
this class contain "only mere commonplace matters that the
jurors would be apt to know about and act upon in the ab-
sence of instructions"; and that "it is well settled that the
giving of instructions of that class will not be held a proper
ground for reversal."   The same was held in *People* v. *Rus-
sell,* 19 Cal. App. 750, [127 Pac. 829], and in *Poor* v. *W. P.
Fuller & Co.,* 30 Cal. App. 650, [159 Pac. 233].   So it has
also been held as to instructions which advise the jury that
oral admissions are to be viewed with caution, which point
is also raised in another paragraph of appellant's brief.   (See

*People* v. *Tibbs,* 143 Cal. 100, [76 Pac. 904].) We conclude, therefore, that as to neither of the matters adverted to was the error such as to prejudice the right of the defendant to a fair and impartial trial.

It is next complained that the court erred in refusing to instruct the jury that the fact that defendant did not flee from the scene of the shooting, was of itself a circumstance in his favor. In the case of *People* v. *Montgomery,* 53 Cal. 576, 577, the court observes that while the flight of a person suspected of having committed a crime might be a circumstance which, if unexplained, would tend to establish his guilt, that "it by no means follows that his failure to flee, having the opportunity to do so, tends to prove his innocence." And even though it be conceded that the acts of the defendant after firing the shots were all pertinent to be considered by the jury, including his act in remaining at the door of the house, yet, nevertheless, those matters, in so far as they are entitled to weight, may be assumed to have been fully considered by the jury, as they belong again to the category of "commonplace things" which the mind of an ordinary man will take cognizance of without being cautioned or instructed so to do. We do not agree with appellant that there was error committed by the giving of the instruction as to the intent which would be presumed as to the result following a voluntary act. The instruction was in substance that which has heretofore been given in many cases, and in our view it was pertinent to the facts disclosed by the evidence in this case.

The charge also is made that the jury received evidence out of court which improperly influenced their consideration of the case. It appears that at the trial the door which was identified as being the same door through which the three bullets were fired by the defendant was introduced in evidence and exhibited to the jury. It showed the three bullet holes, and the testimony was that they were the ones produced by the shots fired from the defendant's revolver. A blackboard had been used to illustrate the testimony of witnesses and upon which was drawn a diagram of the scene of the crime. After the jury had been instructed and was about to retire, a juror requested that the jury be permitted to have the blackboard and door. These two articles were carried into the jury-room without any direction on the part of the

court and were left there before the jury entered the room. The exhibits which the jury took with them into the jury-room were not included among those things which by section 1137 of the Penal Code the jury is permitted to have during its deliberations. However, we do not think that prejudice can be implied from the fact that these particular exhibits were so left in the possession of the jury in the jury-room. No showing was made that there was anything about the particular exhibits which would furnish to the jury any other information than that which they had already obtained from the same articles as exhibited to them during the trial. There is no showing of any examination made by the jurors of the articles during their deliberations or, in brief, any showing that either improper impressions might have been or were received by the jury. Prejudice will not be presumed from the fact that the exhibits were within reach, and that opportunity was afforded for their inspection and examination during the deliberations of the jury. The case, to our minds, in its facts falls within the ruling made in *People* v. *Hower*, 151 Cal. 638, [91 Pac. 507], where complaint was made because a bloody shirt alleged to contain rents and cuts made by the defendant's knife, with dried and matted blood thereon, was left on the floor of the room where the jury was deliberating. The court there said: "There is nothing but the bare 'information and belief' statement of the defendant's attorney to show that any examination of the coat or shirt was made by any juror after the submission of the case, and this, of course, was ineffectual for any purpose. (*People* v. *Feld*, 149 Cal. 464, [86 Pac. 1100].) The mere fact that they were on the floor of the courtroom, and in sight of the jury, does not compel the conclusion that they were so examined. Moreover, the affidavits on motion for a new trial were such as to support a conclusion that the articles had been fully inspected and examined by the jury at the time they were received in evidence, and we are unable to see how, under the circumstances of this case, the defendant could be held to have been prejudiced, even had it appeared that the jurors, or some of them, had again inspected the garments."

The contention that the alleged incriminating statements made by the defendant to the police officer were improperly received because of a lack of sufficient foundation authorizing the evidence to be introduced, seems to be without merit.

The officer giving the testimony stated that no inducements were held out or improper influence exerted by himself or any other person to his knowledge, and that the statements were free and voluntary. The mere fact that the defendant may have been in charge of other officers and in jail prior to the making of the statement which is viewed as a confession did not make it incumbent upon the prosecution to produce all of those officers and to prove that they in their respective turn. had not by improper influence persuaded defendant to declare himself in the manner he did to the officer who gave evidence as to the statements.

An examination of the entire record in this case impresses us with the conviction that defendant was given a fair trial. No sufficient reason has been furnished why the judgment or order should be disturbed.

The judgment and order are affirmed.

Conrey, P. J., and Shaw, J., concurred.